IN THE COURT OF CRIMINAL APPEALS

OF TEXAS

 

 



NO.
PD-1623-03




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 

 



MICHAEL D. JOHNSON, Appellant

 

v.

 

THE STATE OF TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ON APPELLANT’S PETITION FOR
DISCRETIONARY REVIEW

FROM THE SEVENTH COURT OF APPEALS

LUBBOCK 
COUNTY




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



            Keller, P.J., delivered
the opinion of the Court in which Meyers, Hervey, Holcomb and Cochran, JJ.,
joined.  Price, Womack, Johnson and Keasler, JJ., concurred.

 

O P I N I O N 

 

            When defense
counsel’s conduct deprives a defendant of his constitutional right to testify,
is that deprivation subject to an analysis of harm or prejudice, and if so,
what standard should be used?  We hold that this type of claim is properly
characterized as one of ineffective assistance of counsel and that the usual
analysis of prejudice under Strickland v. Washington[1] applies.

 








I.
BACKGROUND

A.
Trial

            Appellant
was charged with committing aggravated assault.[2]  At trial, the evidence showed that he and his
girlfriend, Yasminda Robinson, had been drinking alcoholic beverages during a
birthday party at a friend’s house.  

            Robinson
testified to the following events:  Appellant insisted on driving her and her
four-year-old son home, but during the trip, Robinson became concerned that
appellant was intoxicated and asked to be returned to her friend’s house. 
Appellant refused, asserting that Robinson was drunk and should not be driving. 
In an attempt to get away from appellant, Robinson grabbed the steering wheel
with the intent to “get his attention or flip the car and get out.”  A fight
ensued, in which they each hit the other.  Appellant stopped the car, and
Robinson got out of the vehicle. Robinson tried to get her son out of the back
seat, but before she could do so appellant shoved her and she fell to the
ground.  Appellant then straddled her; when she started screaming he choked her
with his hands.  Robinson “almost passed out” on two occasions.  Appellant
released Robinson after her son got out of the vehicle.  Robinson tried to
appease appellant by acting apologetic.  The three of them returned to the car
and continued on toward Robinson’s apartment.  Robinson asked appellant to stop
at a Town and Country convenience store so that she could use the restroom. 
While there, she handed to an employee of the store a note stating that
appellant was trying to kill her and asking for help.  The note also contained
Robinson’s name, address, and telephone number.

            The
store clerk called the police, and appellant was subsequently arrested outside
of Robinson’s apartment.  Officer David Paulk noticed that Robinson had
a large, deep scratch on one of her arms and light choking marks on her neck.

            Upon
his arrest, appellant was placed into Officer Paulk’s patrol car.  While there,
he and the officer had a conversation that was electronically recorded.  During
this conversation appellant denied ever going to the Town and Country store
that day.  This statement, and all other conversation occurring in the patrol
car, was suppressed by the trial court because Officer Paulk had failed to give
Miranda[3]
warnings.

            The
evidence at trial included letters and electronically recorded telephone calls
from appellant to the victim while appellant was in jail.  During these
communications, appellant made comments regarding what happened during the
incident.  Sometimes appellant stated that he had not tried to hurt the
victim.  Other times appellant admitted that he behaved badly, including 
grabbing Robinson in the wrong way and putting his hands on her in the wrong
way.  He apologized numerous times for his behavior.  During these
communications appellant also attempted to persuade the victim to drop the
charges, plead the Fifth Amendment, or change her story.  He claimed that  if
she did what he said, appellant could file a false imprisonment lawsuit, and he
and the victim would both get plenty of money.  In addition, during one of the
recorded conversations, appellant admitted that Robinson would not be telling
the truth if she followed his instructions.[4]

            The
State also introduced the judgment of conviction for a prior assault on a
different woman to satisfy the “prior conviction” element of one of the legal
theories contained in the indictment.[5]

            Appellant
was convicted.  At the punishment stage, the prosecution introduced evidence
that appellant had two prior felony convictions.  The jury sentenced appellant
to fourteen years in prison.

B.
Hearing on motion for new trial

            At
the hearing on the motion for new trial, appellant claimed that his trial
counsel deprived him of his constitutional right to testify.  Appellant told
his attorney several times that he wanted to testify to give his side of the
story, but counsel replied, “Your priors will kill you.”  Appellant stated that
he was unaware that he had the final authority to make the decision on whether
to testify and that his attorney failed to so inform him.  Appellant further
stated that, had he known that he could testify against counsel’s wishes, he
would have done so.

            Appellant
stated that he would have testified to the following at trial: Robinson was the
aggressor in their fight.  She was drunk, and she mistakenly believed that he
was seeing another woman.  She nearly succeeded in wrecking the car.  She beat
appellant with her fists and a stick, and she clawed at and scratched his
face.  Appellant did not choke her, but pushed her back while looking away with
his eyes closed to prevent her from scratching him more.  While he was pushing
her back, she made a gagging sound, and he let go of her.[6]  The State cross-examined appellant
regarding the nature of the stick he claimed the victim used, and in response
to questioning, appellant claimed it was a tree branch.  

            Trial
counsel testified that he was against appellant testifying at trial and told
him so.  Counsel further stated that he did not specifically tell appellant
that he could testify against counsel’s wishes because counsel assumed
appellant already knew that.

            Regarding
appellant’s story, trial counsel related that appellant told him that Robinson
was drunk, that she was mad about finding a cell phone, that she started
hitting him, and that he was defending himself.  Counsel also remembered
appellant saying that Robinson got out of the car and fell, but counsel could
not remember the entire story.  Counsel did recall that the version of events
appellant had related to counsel was “pretty close” to the version given
by the victim at trial.  Counsel was surprised that the victim’s “testimony
came out like it did.”

            Evidence
at the motion for new trial hearing also showed that appellant’s prior assault
conviction involved a choking assault against the mother of his child. 

            The
trial court denied the motion for new trial.

C.
Court of appeals opinion

            On
appeal, appellant contended that he was improperly denied the right to
testify.  The court of appeals analyzed the claim as an ineffective assistance
of counsel claim under Strickland.[7]  The court concluded that counsel’s performance was
deficient because his conduct deprived appellant of his right to testify.[8]  However, the
court of appeals held that appellant failed to show prejudice.  In support of
this holding, the appellate court offered two main reasons.  First, it found
that the jury heard at least part of appellant’s version of the incident.[9]  The appellate court
referred to a compact disc containing the recorded telephone conversations
admitted into evidence at trial.  Second, the court found that appellant’s
opportunity to testify “would have come at a price.”[10]  Appellant would have been impeached with
his two prior felony convictions and he would have risked causing the admission
of the details of his prior assault conviction.[11]  Further, he would have been
cross-examined about his prior denial of being at the scene and about damaging
statements made in the recorded telephone conversations.[12]  The court of appeals concluded that
there was not a reasonable probability that the result of appellant’s trial
would have been different.[13]

D.
Appellant’s contentions

            Appellant
presented the following grounds in his petition: 

(1)
What is the appropriate standard that courts must utilize in reviewing a
violation of a defendant’s right to testify when the violation occurs through
actions of defense counsel?

 

(2)
Did the court of appeals misapply Strickland’s prejudice analysis
contrary to controlling United States Supreme Court decisions? 

 

Appellant
contends that a denial of the defendant’s right to testify – from whatever
source – is “structural” error, requiring automatic reversal without conducting
any sort of harm analysis.  Second, he argues for the application of the harm
standard articulated in Chapman v. California: that the error is
reversible unless found to be harmless beyond a reasonable doubt.[14]  As a final optional
position, appellant contends that the error is reversible under Strickland. 
Under this final option, appellant argues for the more limited prejudice
inquiry conducted by the Supreme Court in cases that involve involuntary pleas
and denial of appeal: whether, absent counsel’s misconduct, the defendant would
have availed himself of the right in question – in this case, whether the
defendant would in fact have testified.  Appellant also contends that the court
of appeals “failed to take into consideration the unique nature of a defendant’s
testimony and its particular effect on the prejudice component.” 

II.
ANALYSIS

A.
Overview

            The
appropriate standard of harm or prejudice depends upon the answers to two
questions:

First,
is the deprivation of a defendant’s right to testify, caused by defense
counsel, an error that is properly attributable to the trial court? 
Second, is the deprivation of a defendant’s right to testify the kind of
violation that is properly characterized as a “structural” defect?  The
possible answers to these two questions produce four distinct positions on how
to handle this type of claim.  (1) If the answer to both questions is “yes”
(attributable to the trial court and a structural defect), then the deprivation
is constitutional error of the “structural” variety  and no analysis of harm or
prejudice is conducted.  (2) If the answer to the first question is “yes”(attributable
to the trial court) but the answer to the second question is “no” (not a
structural defect), then the deprivation is constitutional error subject to the
usual standard of harm articulated in Chapman v. California, which calls
for reversal unless the error is determined to be harmless beyond a reasonable
doubt.  (3) If the answer to the first question is “no” (not attributable to
the trial court) but the answer to the second question is “yes” (a structural
defect), then the deprivation is attorney error analyzed as ineffective
assistance of counsel under Strickland, but with a more limited
prejudice inquiry than is normally conducted.  (4) If the answer to both
questions is “no” (not attributable to the trial court and not a structural
defect), then the deprivation is attorney error analyzed as an ineffective
assistance of counsel question under the usual Strickland analysis.  We
find that the answers to the two questions are “no” and hold that the usual Strickland
analysis applies.

B.
Whose error is it anyway?

            Ordinarily,
a conviction is not overturned unless the trial court makes a mistake.[15]  There are just a few
situations in which a conviction can be overturned even though the trial court
has done nothing wrong.  Misconduct by the prosecutor, alone, can be grounds
for such an occurrence if perjured testimony is knowingly used,[16] exculpatory evidence is
suppressed,[17] or the
prosecutor has a conflict of interest requiring recusal.[18]  Defense counsel can provoke such an
occurrence by being unqualified,[19] having a conflict of interest,[20] failing to act on behalf of the defendant
in any meaningful way,[21]
or by committing errors that prejudice the defendant.[22]  

            These
limited situations all share a common element: ordinarily, neither the trial
court nor the defendant  has any control over the events.  The use of perjured
testimony and the suppression of exculpatory evidence cannot always be
corrected by the trial court or objected to by the defendant because, often,
neither is in a position to know about the wrongdoing at the time it occurs.  A
prosecutor’s refusal to recuse himself from the case cannot be corrected
because the trial court has no authority to force a recusal.[23]  And a deficiency in
defense counsel’s qualifications or representation ordinarily cannot be
corrected by the trial court or the defendant because defense counsel is the
very person charged with safeguarding the defendant’s interests.   

             Whether
a harm analysis can be applied to these types of nonjudicial misconduct depends
upon whether the misconduct amounts to a complete denial of counsel.  If, in
essence,  the defendant has been completely denied counsel, then a harm
analysis does not apply.[24] 
So a harm analysis is not conducted when a defense attorney entirely fails to
subject the prosecution’s case to adversarial testing,[25] when the so-called attorney is an
unlicensed layman masquerading as an attorney,[26] or when the attorney has been disciplined
by the State Bar and “the reasons for the discipline imposed reflect so poorly
upon the attorney's competence that it may reasonably be inferred that the attorney
was incompetent to represent the defendant in the proceeding in question.”[27]  

            However,
if the misconduct in question does not amount to the complete denial of
counsel, then some standard of harm, variously phrased as “prejudice” or “materiality,”
is required to establish a constitutional violation leading to reversal of the
conviction.  For the “knowing use of perjured testimony,” the harm standard is
whether there is a “reasonable likelihood that the false testimony could have affected
the judgment of the jury”[28]
– also held to be the same as Chapman’s “beyond a reasonable doubt”
standard.[29]  For
misconduct involving a prosecutor’s failure to recuse himself due to a conflict
of interest created by dual roles as advocate and witness, the standard is
whether the defendant has suffered actual prejudice.[30]  And suppression of exculpatory evidence
and ineffective assistance of counsel claims are governed by the Strickland
materiality/prejudice standard: whether “there is a reasonable probability that
. . . the result of the proceeding would have been different.”[31]

            Strickland
prescribes the usual standard for evaluating misconduct claims flowing from the
conduct of defense counsel.[32] 
Besides the complete denial of counsel, there are only two situations excepted
from the straightforward application of Strickland’s requirements to
defense counsel misconduct: (1) a conflict of interest and (2) deficient
performance regarding a right the violation of which would constitute a
structural defect.

            Conflict
of interest claims involving defense counsel are not analyzed under Strickland
and are subject to a very limited harm analysis: the defendant must demonstrate
“that counsel ‘actively represented conflicting interests’ and that ‘an actual
conflict of interest adversely affected his lawyer's performance.’”[33]  Once that predicate for a
conflict of interest claim is shown, no further showing of prejudice is
required, at least in part because a conflict of interest affects the entire
representation.[34] 
We have applied this rule to prosecutorial misconduct involving a conflict of
interest when the conflict derives from the prosecutor’s prior service as
defense counsel in the same case.[35]

            While
the Supreme Court does not use the Strickland standard in conflict of
interest cases, it has analyzed deficient-performance/structural-defect claims
within the Strickland framework, but with a more limited prejudice
inquiry than is ordinarily conducted.[36]  In Hill v. Lockhart, the defendant contended that
his guilty plea was involuntary because his attorney gave him erroneous
information.[37]  The
Supreme Court held that, to meet the prejudice prong of Strickland, a
defendant in this situation must show “a reasonable probability that, but for
counsel’s errors, he would not have pleaded guilty but would have insisted on
going to trial.”[38] 
In Roe v. Flores-Ortega, the defendant contended that counsel failed to
consult with him about filing an appeal.[39]  The Court held that, to show prejudice, a defendant in
this situation must demonstrate “a reasonable probability that, but for counsel’s
deficient failure to consult with him about an appeal, he would have timely
appealed.”[40]  In
both cases the defendant was required to show a reasonable probability that,
absent counsel’s errors, a particular proceeding would have occurred, but he
was not required to show that the proceeding would have resulted in a favorable
outcome.[41]    So, in
the involuntary plea context, the defendant need not show that his case would
have received a more favorable disposition had he gone to trial, and in the
appeal context, he need not show that he would have received a favorable
disposition on appeal.[42]

            The
key to this different standard of prejudice is that the deprivation of a trial
and the deprivation of an appeal are both structural defects.[43]  Comparing these
deprivations to the denial of counsel at a critical stage, the Supreme Court
has observed that these deprivations amounted to the “even more serious denial
of the entire judicial proceeding itself” and “similarly demands a presumption
of prejudice.”[44] 
Had a trial or appellate court, in the face of a timely and proper request,
arbitrarily denied the defendant one of these proceedings, the error would
clearly be reversible without a showing of harm.  In the ineffective assistance
of counsel context, the narrowed prejudice inquiry is designed to ensure that
the defendant would actually have availed himself of the proceeding in
question, so that he really is in the same position as someone whose rights
were denied by the trial court: “counsel’s deficient performance must actually
cause the forfeiture [of the proceeding in question].  If the defendant cannot
demonstrate that, but for counsel’s deficient performance, he would have
[availed himself of that proceeding], counsel’s deficient performance has not
deprived him of anything, and he is not entitled to relief.”[45]

            So,
while the “structural” nature of a complained deprivation may impact the
prejudice inquiry, Strickland still provides the basic framework when
such deprivations flow solely from defense counsel.  Except for the complete
denial of counsel, only a trial court’s commission of structural error
can give rise to automatic reversal, with no harm analysis whatsoever. 
Although it is true that the right to testify is “fundamental” and personal to
the defendant,[46]
those characteristics do not distinguish it from the rights to trial and
appeal,[47] to which
the Supreme Court has applied the Strickland framework.[48] 

            Similarly,
the above discussion shows that Chapman’s “harmless beyond a reasonable
doubt” standard is not appropriate for errors flowing solely from defense
counsel.  The Supreme Court has never applied Chapman to defense counsel
mistakes and, in fact, has applied Chapman to only one type of
nonjudicial impropriety (knowing use of perjured testimony), which is committed
by the prosecution and is of an egregious character.    

            So,
to avoid the requirements of Strickland, the defendant’s complaint must
reveal error attributable to the court and not simply to defense counsel.  In
the present context, for there to be an error attributable to the trial court,
the trial court would have to have a duty to ensure, sua sponte, that
the defendant understands his constitutional right to testify.  A small
minority of jurisdictions has held that there is such a duty[49] but most jurisdictions
hold that there is not, at least where the defendant is represented by counsel
and nothing has placed the trial court on notice that the defendant might want
to testify.[50]  Not
surprisingly, jurisdictions that have imposed a Chapman harm analysis
tend to be the same jurisdictions that impose a duty upon the trial court[51] or at least strongly
suggest that the trial court conduct its own inquiry.[52]

            Two
basic rationales are given for imposing on the trial court a duty to ensure a
knowing waiver of the right to testify.  Colorado, South Carolina, and
Wisconsin analogize the “right to testify” to “the right to counsel” or to the “right
to a jury trial” and hold that the procedural safeguards in Johnson v.
Zerbst[53] must
apply to the relinquishment of the former as well as the latter two.[54]  Hawaii, Tennessee, and
West Virginia have imposed the duty as a prophylactic measure designed to
protect the underlying constitutional right.[55] All three of the latter jurisdictions
have recognized that the prophylactic rule imposed is not itself required by
the federal constitution[56]
and at least two of the three have declined to apply the rule retroactively –
even to the parties in the case announcing the rule.[57]  Colorado has similarly declined to apply
its rule retroactively.[58] 
Interestingly, West Virginia assumes that a failure to comply with its rule is
harmless if the defendant was represented by counsel and the record contains no
evidence that counsel failed to inform the client of the right to testify, or
that the defendant was coerced or misled into relinquishing that right.[59]

            Jurisdictions
that decline to impose upon the trial court a duty to ensure the defendant’s
understanding of the right to testify have articulated a variety of reasons for
refusing to do so.  Many courts have pointed out that the right to testify is
counterpoised by the right not to testify and have held that a trial court
admonishment about the former unduly risks interference with the latter – and
that the right not to testify is the more fragile right, needing greater
protection.[60]  In
this vein, some courts fear that a trial court admonishment would interfere
with the attorney-client relationship and disrupt legitimate trial strategy.[61]  In addition, many courts
hold that advising the defendant of his right to testify is simply not the
trial court’s responsibility, but is the responsibility of defense counsel, and
the trial court should be able to presume (absent evidence to the contrary)
that counsel carried out that responsibility.[62]  Some courts analogize the “right to
testify” to the right of an accused to represent himself – a right the trial
court is not ordinarily required to admonish a defendant about.[63]  And some courts point out
that the trial judge is not required to admonish a testifying defendant about
the right not to testify, and therefore, should not be expected to admonish a
non-testifying defendant about the converse right.[64]

            We
find the majority view persuasive.  This Court has held that a trial court has
no duty to inform a testifying defendant, represented by counsel, of his right
not to testify.[65] 
If the trial court is not required to admonish a represented defendant about
the right not to testify – arguably the “more fragile right” – then the
trial court surely has no duty to do so with regard to the converse right to
testify.  We agree with the majority of jurisdictions that defense counsel
shoulders the primary responsibility to inform the defendant of his right to
testify, including the fact that the ultimate decision belongs to the
defendant.  Because imparting that information is defense counsel’s
responsibility,  Strickland provides the appropriate framework for
addressing an allegation that the defendant’s right to testify was denied by
defense counsel.[66]

C.
What kind of error is it?

            That
Strickland provides the appropriate framework is only half the
question.  As discussed above, how the prejudice prong is analyzed depends upon
whether counsel’s actions relate to a structural defect or to a mere “trial
error.”  Essentially, we must determine whether deprivation of the underlying
right (in this case the right to testify) would have been structural error if the
trial court had caused the deprivation.  In Cain v. State we held that “structural”
errors were federal constitutional errors labeled by the United States Supreme
Court as such.[67]  In
Johnson v. United States, the Supreme Court set forth its most recent
list of structural errors: the total deprivation of counsel at trial, lack of
an impartial trial judge, the unlawful exclusion of members of the defendant’s
race from a grand jury, the denial of the right to self-representation at
trial, the denial of the right to a public trial, and an instruction that
erroneously lowers the burden of proof for conviction below the “beyond a
reasonable doubt” standard.[68] 
And, as discussed above, the Supreme Court described the total deprivation of a
right to trial or appeal in terms that clearly equate to structural error
although, because these were ineffective assistance of counsel cases, they were
not labeled as such.[69]     


            Deprivation
of the right to testify is not in Johnson’s list of structural errors,[70] and the Supreme Court has never
specifically labeled violations of the right as “structural.”[71]  The right to testify was,
however, recognized as a “fundamental” constitutional right in Rock v.
Arkansas.[72]  In that
case, the Supreme Court found that the right flowed from several provisions in
the United States Constitution: the Due Process Clause of the Fourteenth
Amendment (“right to be heard”), the Compulsory Process Clause of the Sixth
Amendment, the “structure” of the Sixth Amendment (right to personally make a
defense), and the Fifth Amendment’s guarantee against compelled testimony.[73]  Violations of rights
flowing from the first, second, and fourth sources have historically been
subjected to harm analyses.[74] 


            The
third source includes the right to self-representation,[75] the denial of which has been
characterized as structural.[76] 
In connection with its discussion of this source for the right to testify, the
Supreme Court stated: 

Even
more fundamental to a personal defense than the right of self-representation,
which was found to be “necessarily implied by the structure of the Amendment,”
is an accused’s right to present his own version of events in his own words.  A
defendant’s opportunity to conduct his own defense by calling witnesses is
incomplete if he may not present himself as a witness.[77]

 

The
question is whether the Supreme Court’s discussion in Rock, including
its characterization of the right as “fundamental” and its discussion of the
third source of the right to testify, amounted to a pronouncement that a
violation of the right to testify was a “structural” error for the purpose of
conducting a harm analysis.  We conclude that it did not.

            Characterizing
the right to testify as “fundamental” does not necessarily mean that a
violation of the right is “structural.”  The Supreme Court has, in the past,
applied harm analyses to constitutional rights characterized as “fundamental.”[78]  The footnote in Rock
in which the Supreme Court labeled the right to testify as “fundamental”
suggested that the right was fundamental in the sense that the defendant
possessed the ultimate authority to decide whether to invoke it.[79]  That is not the same as
exempting a violation of the right from a harm analysis.

            Nor
should we find a structural defect merely because the right in question stems
from a source that includes rights whose violations are sometimes structural. 
Certain violations of the right to counsel are subject to a harm analysis, for
example,[80] even
though there are violations of the right to counsel that are structural.[81]    

            In
fact, the Supreme Court addressed the defendant’s right to testify in Crane
and found that the deprivation of the right in that case was subject to a harm
analysis.[82]  Of
course, we are confronted here with the complete denial of the right to testify
at trial rather than the partial denial of the right that occurred in Crane,
in which the defendant was denied the right to testify regarding the
circumstances surrounding his confession.[83]  Nevertheless, the Supreme Court has
given no indication that the complete denial of the right to testify should be
treated as structural, as is the case with the complete denial of the right to
counsel.

            Moreover,
the Supreme Court’s explanation regarding the differences between “trial error”
and “structural error” supports treating even a complete denial of the right to
testify as subject to a harm analysis.  In Fulminante, the Supreme Court
explained that a “trial error” is one “which occurred during the presentation
of the case to the jury, and which may therefore be quantitatively assessed in
the context of other evidence presented in order to determine whether” the
error “was harmless.”[84] 
By contrast, a “structural error” is one that affects “the entire conduct of
the trial from beginning to end.”[85]  A structural error affects “the framework within which
the trial proceeds, rather than simply [being] an error in the trial process
itself.”[86]  It
deserves mentioning that the Supreme Court found the admission of a coerced
confession – the converse of precluding the defendant’s testimony – to be trial
error, subject to a harm analysis.[87]  We think that the same conclusion with respect to the
right to silence should be drawn with respect to the right to testify.  While a
defendant’s right to testify is clearly important, even a compete denial of
that right is not the type of error that affects the entire trial or the
framework within which the trial proceeds.  Rather, the effect of the error can
be quantitatively assessed by looking at the defendant’s anticipated testimony,
the evidence admitted at trial, the jury charge, and other factors.  

            Moreover,
the lower federal courts have not interpreted the discussion in Rock as
a pronouncement that the violation of the right to testify is structural error.
 Except for the Third Circuit, which has not addressed the issue,[88] the federal circuits are
unanimous in applying a harm or prejudice analysis to the denial of the right
to testify, addressing the issue either as an ineffective assistance claim or
as judicial trial error, depending on who was responsible for the alleged
violation.[89]  

            In
line with the reasoning of the Supreme Court and the holdings of the federal
courts that have addressed the issue, we hold that a complete denial of the
right to testify at trial is not a structural defect but is the type of
violation that can be subjected to a harm/prejudice inquiry.  Consequently, the
usual Strickland prejudice analysis applies: the defendant must show a
reasonable probability that the outcome of the proceeding would have been
different had his attorney not precluded him from testifying.

D.
Application            

            While
the ultimate question of prejudice under Strickland is to be reviewed de
novo, the trial court should be afforded deference on any underlying
historical fact determinations.[90] 
When no express fact findings are made by the trial court, as is the case with
rulings on motions for new trial,[91] appellate courts should “impute implicit factual findings
that support the trial judge's ultimate ruling on that motion when such
implicit factual findings are both reasonable and supported in the record.”[92]  Viewing the evidence in
accordance with these principles, we agree with the court of appeals that
appellant’s ineffective assistance claim must fail.

            The
trial court could have reasonably believed that appellant’s testimony at trial
would not have been significantly different from some of the exculpatory
statements found in the recorded telephone conversations.  In those
conversations, appellant stated that he and the victim were both to blame for
the fight and that he did not intend to hurt the victim.  And in fact, trial
counsel testified that appellant’s and the victim’s stories were very similar. 
The victim surprised trial counsel by acknowledging her responsibility for some
of the acrimony, including her reckless attempt to flip the car while her child
was inside.  The trial court was not required to believe that the defendant
would have testified at trial to the more exculpatory version of events
given at the motion for new trial hearing.

            Moreover,
had appellant testified, he could have been impeached with his earlier denial
that he had even been at the Town and Country convenience store.  Although that
statement was suppressed under Miranda, it would have been admissible as
impeachment.[93] 
Impeachment with that earlier statement would have undermined appellant’s
credibility, conflicting with his trial testimony and that of the Town and
Country store clerk, a disinterested witness.  At the same time, the earlier
statement would have conveyed to the jury that appellant knew he had something
to hide.  In addition, instead of waiting for the punishment stage to introduce
appellant’s prior felony convictions, the State could have introduced them at
the guilt stage.  Appellant could also have been confronted on
cross-examination with numerous other incriminating statements made in the
phone conversations and in his letters to the victim, including his attempt to
get the victim to exculpate him by saying things that were not true.

            And
even if the trial court believed that the more exculpatory version of events
given by appellant at the motion for new trial hearing was in fact the version
he would have given at trial, there still would not be a reasonable probability
that the outcome would change.  Instead of one consistent, albeit weak,
exculpatory story of the transaction, such testimony, and the impeachment that
would follow, would reveal that appellant told three inconsistent stories about
the incident in question.  The testimony about the “stick” would have been
entirely new, and could have been vigorously challenged by the State in
cross-examination.  In addition, by saying that the victim made a gagging noise
as he was trying to push her off, appellant could have opened the door at the
guilt stage to testimony concerning the details of the prior assault offense –
in which he choked a former girlfriend  – to rebut a claim of accident.  And
his claim that he did not choke the victim would have been contradicted by
Officer Paulk’s observation that choke marks were present on the victim’s neck.

            Further,
appellant’s testimony could have hurt him at the punishment stage because of
its tendency to show that, even at the time of trial, he refused to accept his
share of the blame for what happened.

            As
for appellant’s contention that the court of appeals failed to recognize the “special
significance” of an accused’s testimony, even assuming that special
significance should be accorded, it would not help appellant here.  Some
exculpatory statements by appellant were before the jury through the recorded
telephone conversations.  Appellant also incriminated himself in those
conversations and in letters to the victim with his admissions of wrongdoing and
his attempts to derail the prosecution by getting the victim to recant or drop
the charges.  His chances of acquittal were admittedly slim, but there was at
least a chance the jury might have decided that both appellant and the victim
were equally to blame for what occurred in the encounter.  Had he testified,
however, his chances would have become slimmer: the jury would have discovered
that appellant was a two-time felon who had choked a previous girlfriend, had
given contradictory and unlikely stories about the incident, and had evidenced
his consciousness of guilt by initially trying to deny his participation in the
events in question.  We find that court of appeals did not err in holding that
the prejudice prong of Strickland has not been satisfied. 

            The
judgment of the court of appeals is affirmed.

                                                                                    KELLER,
Presiding Judge                    

Date delivered: May 25,
2005

Publish

                                                                        









            [1]  466 U.S.
668 (1984).





            [2]  He was
also charged with a community supervision violation arising out of this
incident.  The trial court revoked his community supervision the day after the
jury convicted appellant of aggravated assault.





            [3]  Miranda
v. Arizona, 384 U.S. 436 (1966).





            [4]  This last
statement was not contained in the conversations played before the jury but was
contained in State’s exhibit number seven (compact disc), which was later
admitted into evidence in its entirety.  During deliberations, the jury asked
that some of the recorded conversations be played but did not ask for this
particular conversation to be played.  





            [5]  See TEX.
PEN. CODE §22.01(b)(2)(assault on member of household).





            [6]  We note
that the motion for new trial hearing was the first time any evidence was
introduced that the victim used a stick during the altercation. 





            [7]  Johnson
v. State, 120 S.W.3d 10, 15-16 (Tex. App.–Amarillo 2003).





            [8]  Id.
at 17-18.  The State did not file a petition for discretionary review from this
holding, and we express no opinion on the matter.





            [9]  Id.
at 19.





            [10]  Id.





            [11]  Id.





            [12]  Id.





            [13]  Id.





            [14]  386
U.S. 18 (1967).





            [15]  In
appellate parlance, trial court mistakes are referred to as “errors,” Hawkins
v. State, 135 S.W.3d 72, 76 (Tex. Crim. App. 2004), which may be
reversible, depending on the applicable harm analysis (if any).  Id.; see
Tex. R. App. P. 44.2; Almanza
v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985). 





            [16]  United
States v. Bagley, 473 U.S. 667, 679 (1985); Ex parte Fierro, 934
S.W.2d 370 (Tex. Crim. App. 1996).





            [17]  Bagley,
473 U.S. at 674-678; Brady v. Maryland, 373 U.S. 83, 87 (1963).





            [18]  State
ex rel. Eidson v. Edwards, 793 S.W.2d 1, 6 (Tex. Crim. App. 1990).





            [19]  Cantu
v. State, 930 S.W.2d 594 (Tex. Crim. App. 1996).





            [20]  Cuyler
v. Sullivan, 446 U.S. 335 (1980).





            [21]  United
States v. Cronic, 466 U.S. 648, 659 (1984)(“if counsel entirely fails to
subject the prosecution’s case to meaningful adversarial testing”).





            [22]  Strickland,
supra.





            [23]  Edwards,
793 S.W.2d at 6.





            [24]  Cronic,
466 U.S. at 659; Cantu, 930 S.W.2d at 596. 





            [25]  Cronic,
supra.





            [26]  Cantu,
930 S.W.2d at 596, 602.





            [27]  Id.
at 602.





            [28]  Bagley,
473 U.S. at 678.





            [29]  Id.
at 679 n. 9.





            [30]  House
v. State, 947 S.W.2d 251, 243 (Tex. Crim. App. 1997).





            [31]  Bagley,
473 U.S. at 682.





            [32]  Cronic,
466 U.S. at 659 n. 25.





            [33]  Strickland,
466 U.S. at 692 (quoting Cuyler, 446 U.S. at 350, 348).  The Supreme
Court noted that the conflict of interest rule was “not quite the per se rule
of prejudice that exists” for the denial of counsel altogether.  Id.





            [34]  See
Strickland, 466 U.S. at 696 (“In those circumstances, counsel breaches the
duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is
difficult to measure the precise effect on the defense of representation
corrupted by conflicting interests”); Cuyler, 446 U.S. at 349 (“the
conflict itself demonstrated a denial of the ‘right to have the effective
assistance of counsel’”); Holloway v. Arkansas, 435 U.S. 475, 489-491
(1977)(“The mere physical presence of an attorney does not fulfill the Sixth
Amendment guarantee when the advocate's conflicting obligations have
effectively sealed his lips on crucial matters”); Glasser v. United States,
315 U.S. 60, 75-76 (1942)(“To determine the precise degree of prejudice
sustained by Glasser as a result of the court's appointment of Stewart as
counsel for Kretske is at once difficult and unnecessary. The right to have the
assistance of counsel is too fundamental and absolute to allow courts to
indulge in nice calculations as to the amount of prejudice arising from its
denial”).





            [35]  Ex
parte Spain, 589 S.W.2d 132, 134 (Tex. Crim. App. 1979).





            [36]  Hill
v. Lockhart, 474 U.S. 52, 56-59 (1985); Roe v. Flores-Ortega, 528
U.S. 470, 476-487 (2000).





            [37]  474
U.S. at 56.  The erroneous information concerned the application of parole law.
Id.





            [38]  Id.
at 59.  Due to its holding regarding the requirements of Strickland’s
prejudice prong in an involuntary plea case, the Supreme Court found “it
unnecessary to determine whether there may be circumstances under which
erroneous advice by counsel as to parole eligibility may be deemed
constitutionally ineffective assistance of counsel.”  Id. at 60.





            [39]  528
U.S. at 484.





            [40]  Id.





            [41]  Id.
at 483.





            [42]  See
id. at 485-486.





            [43]  At
least one state supreme court has recognized the relationship between errors
exempted from a harm analysis on appeal and those presumed prejudicial in an
ineffective assistance of counsel context.  Momon v. State, 18 S.W.3d
152, 167 n. 17 (Tenn. 1999), reh’g granted in part, 18 S.W.3d 152 (Tenn.
2000)(“a rule of presumed prejudice under the Sixth Amendment has the same
practical effect as holding that denial of the right to testify under the Fifth
Amendment defies harmless error analysis”). 





            [44]  Flores-Ortega,
528 U.S. at 483.





            [45]  Id.
at 484 (bracketed material substituted for original: references to “appeal”).





            [46]  Rock
v. Arkansas, 483 U.S. 44, 52 (1987).





            [47]  Jones
v. Barnes, 463 U.S. 745, 751 (1983).





            [48]  See
Hill and Flores-Ortega, supra.





            [49]  People
v. Curtis, 681 P.2d 504, 512 (Colo. 1984); Tachibana v. State, 79
Haw. 226, 234-236, 900 P.2d 1293, 1301-1303 (1995); State v. Davis, 422
S.E.2d 133, 146 (S.C. 1992), overruled on other grounds, Brightman v.
State, 520 S.E.2d 614, 616 n. 5 (S.C. 1999); Momon, 18 S.W.3d at 162
(Tenn.2000); State v. Salmons, 203 W. Va. 561, 581-582, 509 S.E.2d 842,
862-863 (1998); State v. Weed, 263 Wis. 2d 434, 462-464, 666 N.W.2d 485,
498-499 (2003).  





            [50]  The federal circuits are
nearly unanimous in this regard: Siciliano v. Vose, 834 F.2d 29, 30 (1st
Cir. 1987); Brown v. Artuz, 124 F.3d 73, 79 (2nd Cir. 1997), cert.
denied, 522 U.S. 1128 (1998); United States v. Leggett, 162 F.3d
237, 246-248 (3rd Cir. 1998), cert. denied, 528 U.S. 868
(1999); United States v. McMeans, 927 F.2d 162, 163 (4th Cir.
1991); United States v. Brown, 217 F.3d 247, 258 (5th Cir.), cert.
denied, 521 U.S. 973 (2000); United States v. Webber, 208 F.3d 545,
551 (6th Cir.), cert. denied, 531 U.S. 882 (2000); Underwood
v. Clark, 939 F.2d 473, 476 (7th Cir. 1991); United States v.
Pino-Noriega, 189 F.3d 1089, 1094-1095 (9th Cir.), cert.
denied, 528 U.S. 989 (1999); United States v. Janoe, 720 F.2d 1156,
1161 (10th Cir. 1983), cert. denied, 465 U.S. 1036 (1984); United
States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir.), cert.
denied, 525 U.S. 912 (1998); United States v. Ortiz, 82 F.3d 1066,
1071-1072 (DC Cir. 1996); see also United States v. Belizaire, 24 M.J.
183, 184-185 (C.M.A. 1987).  Most state courts of last resort have followed
suit.  State v. Gulbrandson, 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995);
Bader v. State, 344 Ark. 241, 248-249, 40 S.W.3d 738, 743-744, cert.
denied, 534 U.S. 826 (2001)(finding procedural default); People v.
Bradford, 14 Cal. 4th 1005, 1052-1053, 929 P.2d 544, 574, cert. denied,
522 U.S. 953 (1997); State v. Paradise, 213 Conn. 388, 404-405; 567 A.2d
1221, 1230 (1990); Torres-Arboledo v. State, 524 So. 2d 403, 409-411
(Fla.), cert. denied, 488 U.S. 901 (1988); Burton v. State, 263
Ga. 725, 728, 438 S.E.2d 83, 86 (1994); Aragon v. State, 114 Idaho 758,
763, 760 P.2d 1174, 1179 (1988); People v. Smith, 176 Ill. 2d 217,
234-235, 680 N.E.2d 291, 302-303, cert. denied, 522 U.S. 920 (1997); Phillips
v. State, 673 N.E.2d 1200, 1202 (Ind. 1996); State v. Reynolds, 670
N.W.2d 405, 411-413 (Iowa 2003); Taylor v. State, 252 Kan. 98, 105-106,
843 P.2d 682, 687-688 (1992); Crawley v. Commonwealth, 107 S.W.3d 197,
199 (Ky. 2003); State v. Hampton, 818 So. 2d 720, 729 (La. 2002); Morales
v. State, 325 Md. 330, 336, 600 A.2d 851, 853-854 (1992); Commonwealth
v. Waters, 399 Mass. 708, 716-717, 506 N.E.2d 859, 865 (1987); Walen v.
State, 563 N.W.2d 742, 751 (Minn. 1997); Shelton v. State, 445 So.
2d 844, 847 (Miss. 1984); State v. Hamm, 818 P.2d 830, 833 (Mont. 1991);
State v. El-Tabech, 234 Neb. 831, 836, 453 N.W.2d 91, 95 (1990); Phillips
v. State, 105 Nev. 631, 633, 782 P.2d 381, 382 (1989); State v. Savage,
120 N.J. 594, 629-630, 577 A.2d 455, 472-473 (1990); State v. Jones, 357
N.C. 409, 417, 584 S.E.2d 751, 756-757 (2003); State v. Antoine, 564
N.W.2d 637, 639 (N.D. 1997); State v. Bey, 85 Ohio St. 3d 487, 499-500,
709 N.E.2d 484, 497, cert. denied, 528 U.S. 1049 (1999); Brennan v.
Vose, 764 A.2d 168, 171-172 (R.I. 2001); Wilcox v. Leapley, 488
N.W.2d 654, 658-659 (S.D. 1992); State v. Mumley, 153 Vt. 304, 306, 571
A.2d 44, 45 (1989), cert. denied, 496 U.S. 939 (1990); State v.
Thomas, 128 Wn.2d 553, 558-559, 910 P.2d 475, 478-479 (1996); State v.
Lobatos, 875 P.2d 716, 724 (1994).  

            In
several states where the court of last resort has not spoken on the matter,
intermediate appellate courts have found no duty. Hutcherson v. State,
677 So. 2d 1174, 1193-1194 (Ala. Crim. App. 1994), rev’d on other grounds,
677 So. 2d 1205 (1996); People v. Simmons, 140 Mich. App. 681, 684-685,
364 N.W.2d 783, 785, appeal denied, 422 Mich. 963 (1985); State v.
Duran 105 N.M. 231, 233, 731 P.2d 374, 376 (Ct. App. 1986); People v.
Dolan, 2 A.D.3d 745, 746-747, 768 N.Y.S.2d 654, 654-655 (2nd
Dept. 2003), appeal denied, 2 N.Y.3d 798 (2004); State v. Brooks,
833 P.2d 362, 364-365 (Utah App. 1992).   





            [51]  Tachibana,
79 Haw. at 239-240, 900 P.2d at 1306-1307; Momon, 18 S.W.3d at 167-168. 
See also State v. Hoffman, 116 Idaho 689, 692, 778 P.2d 811, 814
(Ct. App. 1989)(although trial court admonishment not mandatory, without
admonishment, the record must reflect defendant’s awareness of his right to
testify; interpreting Aragon narrowly); Id. (citing State v.
Darbin, 109 Idaho 516, 708 P.2d 921 (Ct. App. 1985))(applying Chapman
standard); but see State v. Fields, 127 Idaho 904, 912, 908 P.2d 1211,
1219, cert. denied, 516 U.S. 922 (1995)(reiterating Aragon’s
holding that trial court has no duty to advise defendant of right to testify).





            [52]  LaVigne
v. State, 812 P.2d 217, 222 (Alas. 1991)(recommending trial court inquiry);
Id. at 220-221 (applying Chapman standard); Sanchez v. State,
841 P.2d 85, 89 (Wyo. 1992)(recommending trial court inquiry); Id. at 88
(applying Chapman standard).





            [53]  394
U.S. 458 (1938).





            [54]  Curtis,
681 P.2d at 511-512 (counsel); State v. Orr, 403 S.E.2d, 623, 624 (S.C.
1991)(jury trial); Weed, 263 Wis. 2d at 462, 666 N.W.2d at 498 (both).





            [55]  Tachibana,
79 Haw. at 234, 900 P.2d at 1301; Momon, 18 S.W.3d at 162-163; Salmons,
203 W. Va. at 582, 509 S.E.2d at 863.





            [56]  Tachibana,
79 Haw. at 236 n. 6, 900 P.2d at 1303 n. 6 (relying upon Hawaii constitution); Momon,
18 S.W.3d at 163 (procedure announced is a prophylactic rule that is not
constitutionally required); Salmons, 203 W. Va. at 582, 509 S.E.2d at
863 (same).





            [57]  Tachibana,
79 Haw. at 238, 238 n. 10, 900 P.2d at 1305, 1305 n. 10; Momon, 18
S.W.3d at 162-163.





            [58]  Curtis,
681 P.2d at 516-517;  People v. Naranjo, 840 P.2d 319, 322-323 (Colo.
1992).





            [59]  Salmons,
203 W. Va. at 582-583, 509 S.E.2d at 863-864.





            [60]  Siciliano,
834 F.2d at 30; United States v. Pennycooke, 65 F.3d 9, 11 (3rd
Cir. 1995); United States v. Martinez, 883 F.2d 750, 756-757, 760 (9th
Cir. 1989), vacated on other grounds, 928 F.2d 1470 (9th Cir.
1991); Smith, 176 Ill. at 235, 680 N.E.2d at 302; Reynolds, 670
N.W.2d at 412; Taylor, 252 Kan. at 106, 843 P.2d at 688; Waters,
399 Mass. at 716, 506 N.E.2d at 865; Hamm, 818 P.2d at 833; Savage,
120 N.J. at 629-630, 577 A.2d at 472-473; Thomas, 128 Wn.2d at 560, 910
P.2d at 479.





            [61]  Pennycooke,
65 F.3d at 11; Brown, 217 F.3d at 258; Underwood, 939 F.2d at
476; Martinez, 883 F.2d at 757, 760; Van De Walker, 141 F.3d at
1452; Fields, 127 Idaho at 912, 908 P.2d at 1219; Smith, 176 Ill.
at 235, 680 N.E.2d at 302-303; Reynolds, 670 N.W.2d at 412; Hamm,
818 P.2d at 833; Wilcox, 488 N.W.2d at 659; Thomas, 128 Wn.2d at
560, 910 P.2d at 479.





            [62]  Leggett,
162 F.3d at 247; Webber, 208 F.3d at 551; Martinez, 883 F.2d at
757; Van De Walker, 141 F.3d at 1452; Bradford, 14 Cal. 4th at
1053, 929 P.2d at 574; Burton, 263 Ga. at 728, 438 S.E.2d at 86; Phillips,
673 N.E.2d at 1202; Reynolds, 670 N.W.2d at 412; Morales, 325 Md.
at 336, 600 A.2d at 853-854; Savage, 120 N.J. at 630-631, 577 A.2d at
473; Antoine, 564 N.W.2d at 639; Brennan, 764 A.2d at 172; Mumley,
153 Vt. at 306, 571 A.2d at 45.





            [63]  Pennycooke,
65 F.3d at 12, 12 n. 1; Martinez, 883 F.2d at 757-758; Torres-Arboledo,
524 So. 2d at 410-411; Thomas, 128 Wn.2d at 559, 910 P.2d at 479.





            [64]  Brown,
124 F.3d at 79; Martinez, 883 F.2d at 756-757; Thomas, 128 Wn.2d
at 559, 910 P.2d at 479.





            [65]  Newell
v. State, 461 S.W.2d 403, 404 (Tex. Crim. App. 1970); see also Morgan
v. State, 688 S.W.2d 504, 521 n. 14 (Tex. Crim. App. 1985).





            [66]  Brown,
124 F.3d at 79; Pennycooke, 65 F.3d at 12; Sexton v. French, 163
F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855
(1999); United States v. Mullins, 315 F.3d 449, 452-453 (5th
Cir. 2002), cert. denied, 124 S. Ct. 2096 (2004); Van De Walker,
141 F.3d at 1452 (citing United States v. Teague, 953 F.2d 1525, 1534
(11th Cir.), cert. denied, 506 U.S. 842 (1992)); Bradford,
14 Cal. 4th at 1053, 929 P.2d at 574; Commissioner of Correction v.
Rodriquez, 222 Conn. 469, 610 A.2d 631 (1992), overruled on other
grounds, Simms v. Warden, 229 Conn. 178, 185 640 A.2d 601, 605
(1994); State v. Robinson, 138 Wn.2d 753, 765-766, 982 P.2d 590, 597-598
(1999).





            [67]  947
S.W.2d 262, 264 (Tex. Crim. App. 1997).





            [68]  520
U.S. 461, 468-469 (1997).





            [69]  Of
course, the remedy for deprivation of appeal would be to grant an appeal,
rather than a new trial of the case.





            [70]  Id.
at 468-469.





            [71]  See
Rock, passim.





            [72]  Id.
at 53 n. 10.





            [73]  Id.
at 51-53.





            [74]  Crane
v. Kentucky, 476 U.S. 683, 690-691 (1986)(right to be heard under Due
Process and Compulsory Process clauses); Arizona v. Fulminante, 499 U.S.
279, 333 (1991)(compelled testimony – involuntary confession). 





            [75]  Rock,
483 U.S. at 52.





            [76]  See above
discussion.





            [77]  Rock,
483 U.S. at 52.





            [78]  Crane,
476 U.S. at 687, 691; Rushen v. Spain, 464 U.S. 114, 117-119 (1983). 





            [79]  Rock,
483 U.S. at 53 n. 10 (citing, inter alia, Jones v. Barnes).





            [80]  Fulminante,
499 U.S. at 306-307 (citing Satterwhite v. Texas, 486 U.S. 249
(1988)(admission of evidence at sentencing in violation of Sixth Amendment
Counsel Clause) and Coleman v. Alabama, 399 U.S. 1, 10-11 (1970)(denial
of counsel at preliminary hearing)).





            [81]  See
this opinion, ante.





            [82]  Crane,

476 U.S. at 691; see also Fulminante, 499 U.S. at 307 (citing Crane).





            [83]  Crane,
476 U.S. at 691.





            [84]  499
U.S. at 307-308.





            [85]  Id.
at 309.





            [86]  Id.
at 310.





            [87]  Id.





            [88]  Campbell
v. Vaughn, 209 F.3d 280, 281 n. 1 (3rd Cir. 2000), cert.
denied, 431 U.S. 1084 (2001).





            [89]  Bucuvales v. United
States, 98 F.3d 652, (1st Cir. 1996)(applying Strickland:
defendant’s testimony would have increased likelihood of conviction by allowing
the introduction of a prior conviction and defendant’s inevitable admissions); Rega
v. United States, 263 F.3d 18, 21-26 (2nd Cir. 2001), cert.
denied, 534 U.S. 1096 (2002)(applying Strickland: significance of
defendant’s proposed testimony wholly dependent on his credibility and
incredibility of other witnesses, testimony would have been severely undermined
by impeachment, testimony would have opened the door to extraneous conviction,
and evidence of guilt was substantial, including defendant’s prior admissions);
Sexton, 163 F.3d at 882-884 (4th Cir.)(applying Strickland:
discussing the right to testify in the context of the right not to testify,
considering overwhelming evidence); Mullins, 315 F.3d at 456 (5th
Cir.)(applying Strickland: defendant’s testimony would open the door to
extensive criminal record and drug use, much of defendant’s story presented
through other witnesses); Gonzales v. Elo, 233 F.3d 348, 357 (6th
Cir. 2000), cert. denied, 532 U.S. 980 (2001)(applying Strickland:
several witnesses corroborated government’s version of events and defendant’s
testimony would impeach only one of them); Ortega v. O’Leary, 843 F.2d
258, (7th Cir.), cert. denied, 488 U.S. 841 (1988)(applying Chapman
to judicial trial error: overwhelming evidence of guilt, defendant’s testimony
would merely bolster testimony of other witnesses); Hines v. United States,
282 F.3d 1002, 1004-1005 (8th Cir.), cert. denied, 537 U.S.
900 (2002)(applying Strickland: defendant failed to show prejudice
because he failed to say what his testimony would have been); Gill v. State,
342 F.3d 911, 921-922 (9th Cir. 2003)(applying Chapman to
judicial trial error: error was not harmless because the defendant’s testimony
was central to his defense); United States v. Rantz, 862 F.2d 808, 811
(10th Cir. 1988), cert. denied, 489 U.S. 1089 (1989)(applying
Strickland: overwhelming evidence of guilt); Nichols v. State,
953 F.2d 1550, 1553-1554 (11th Cir. 1992)(applying Strickland:
prejudice shown because it was a close case, identity hinged on testimony of
single witness who had only a brief glimpse of the robber); United States v.
Tavares, 100 F.3d 995, 998- 999 (DC Cir. 1996), cert. denied, 520
U.S. 1160 (1997)(rejecting request to adopt per se rule of prejudice;
applying Strickland: defendant’s testimony would be largely cumulative
or peripheral, overwhelming evidence of guilt).  

            Similarly,
the vast majority of the state courts of last resort that have addressed the
issue have found that a harm or prejudice analysis applies.  LaVigne,
812 P.2d at 220 (Alas.)(applying Chapman to all violations of the
right); State v. Franklin, 351 Ark. 131, 137-139, 89 S.W.3d 865, 868-869
(2002)(applying Strickland: overwhelming evidence of guilt); Rodriquez,
222 Conn. at 478-479, 610 A.2d at 636-637 (prejudice must be shown; applying Strickland:
should weigh defendant’s credibility and impact of his proposed testimony
versus impeachment with prior suspicious incidents, motives for committing the
crime, evidence linking him to the crime, and the extent to which proposed
testimony was duplicative of earlier statements); Oisorio v. State, 676
So. 2d 1363, 1364-1365 (Fla. 1996)(declining to adopt a per se rule of
prejudice; applying Strickland); Chambers v. State, 266 Ga. 39,
42 n. 8, 463 S.E.2d 887, 890 n. 8 (1995)(applying Strickland: defendants
failed to show jury would have acquitted had they testified, their stories were
uncorroborated and conflicting); Tachibana, 79 Haw. at 240, 900 P.2d at
1307 (applying “beyond reasonable doubt harmless” standard to all violations of
the right); People v. Madej, 177 Ill. 2d 116, 146-147, 685 N.E.2d 908,
923 (1997), cert. denied, 423 U.S. 1098 (1998), overruled on other
grounds, People v. Coleman, 183 Ill. 2d 366, 701 N.E.2d 1063
(1998)(applying Strickland: overwhelming evidence of guilt); Schertz
v. State, 380 N.W.2d 404, 413-414 (Iowa 1985)(applying Strickland:
testimony would have been about unavailable defense and would not have diluted
strong evidence against defendant); Quarels v. Commonwealth, 142 S.W.3d
73, 2004 Ky. LEXIS 186 (Ky. 2004)(rejecting request to treat error as
structural; applying Chapman to judicial trial error); Washington v.
State, 800 So. 2d 1140, 1146 (Miss. 2001)(applying Strickland: if he
testified, defendant would have been impeached with prior felonies and jury
would have been given opportunity to compare his voice to one on a recording); Winfield
v. State, 93 S.W.3d 732, 736-737 (Mo. 2002)(applying Strickland: if
he testified, defendant would have suffered “disastrous” impeachment with prior
inconsistent statements as well as testimony given in guilt phase); El-Tabech,
234 Neb. at 836-838, 453 N.W.2d at 95-96 (applying Strickland); State
v. Paulsen, 143 N.H. 447, 455-456, 726 A.2d 902, 907-908 (1999)(rejecting
request to presume prejudice; applying Strickland: overwhelming
evidence); State v. Bey, 161 N.J. 233, 736 A.2d 469, (1999), cert.
denied, 530 U.S. 1245 (2000)(rejecting request to presume prejudice or
analyze under Chapman; applying Strickland: defendant’s testimony
would not have affected substantially penalty phase deliberations); State v.
Foster, 560 N.W.2d 194, 198 (N.D. 1997)(applying Strickland: must
show defense was prejudiced); Hooks v. State, 862 P.2d 1273, 1283 (Okla.
Crim. App. 1993), cert. denied, 511 U.S. 1100 (1994)(applying Strickland:
defendant failed to demonstrate any possibility that outcome of trial would
have been different); Wilcox, 488 N.W.2d at 660 (S.D.)(applying Strickland:
defendant did not show reasonable probability of change in outcome); Momon,
18 S.W.3d at 163-167 (Tenn.)(declining to find “structural” error, analyzing Fulminante;
applying Chapman to all violations of the right); State v. Arguelles,
921 P.2d 439, 441-442 (Utah 1996)(rejecting request to presume prejudice;
applying Strickland: record does not reflect what defendant’s testimony
would have been); Robinson, 138 Wn.2d at 765-769, 982 P.2d at 597-599
(rejecting rule of per se reversal; applying Strickland:
defendant must show that his testimony would have a reasonable probability of
effecting a different outcome); Sanchez, 841 P.2d at 88 (Wyo.)(applying Chapmans24 
to all violations of the right).





            [90]  Kober
v. State, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999)(citing Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).





            [91]  See TEX.
R. APP. P. 21.8(b)(“In ruling on the motion for new trial, the court must not
summarize, discuss, or comment on evidence”).





            [92]  Charles
v. State, 2004 Tex. Crim. App. LEXIS 1652, 21-22 (delivered October 6,
2004).





            [93]  Harris
v. New York, 401 U.S. 222, 225-226 (1971).