NO. 07-02-0207-CR
07-02-0240-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 17, 2003

_____

MICHAEL D. JOHNSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-438416; 2000-433704; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

OPINION

Appellant Michael D. Johnson brings two appeals, challenging his conviction for the felony offense of aggravated assault and the revocation of his probation granted after a prior conviction for possession of a controlled substance. In the aggravated assault case

appellant was found guilty by a jury which then assessed punishment of 14 years confinement. In the possession case, appellant's conviction was on his plea of guilty. He has filed one brief in support of both appeals in which he presents a single complaint, stated in nine issues, alleging he was improperly denied the opportunity to testify at trial. We affirm.

Appellant's guilty plea, and adjudication of guilt, in the possession case occurred in March 2001. He was sentenced in conformity with a plea agreement to five years confinement in the Institutional Division of the Texas Department of Criminal Justice. The court suspended imposition of that sentence for a period of five years, and placed appellant on community supervision for five years.

The events giving rise to the aggravated assault charges occurred November 9, 2001. Later that month, the State filed a motion to revoke appellant's community supervision in the possession case, alleging ten violations of the conditions of his community supervision including failure to pay court costs, using alcoholic beverages, and committing additional offenses including public intoxication.

Appellant's indictment for aggravated assault alleged he caused bodily injury to Yasminda Robinson by choking her with his hands and in doing so he used his hands as a deadly weapon. A second count in the indictment characterized the offense as a family violence assault, and contained an enhancement paragraph alleging a prior conviction for family violence assault.

2

Appellant plead not guilty to the assault charge and was tried before a jury in April 2002. The jury found him guilty and set punishment. The next day, the trial court revoked his community supervision in the possession case and sentenced him to five years confinement, to be served concurrently with his aggravated assault sentence.

Appellant timely filed a motion for new trial in each case. Appellant's motion in the assault case argued he was entitled to a new trial because (1) the evidence was insufficient, (2) he was denied his right to testify; and (3) he received ineffective assistance of counsel. At the conclusion of a hearing on that motion, at which appellant and his trial counsel testified, the trial court denied his request. Appellant perfected appeal in each case.

Evidence presented at trial on the assault case showed that, at the time of the events giving rise to appellant's prosecution, he had been dating Robinson for about six weeks. For three weeks of that time, he had lived with Robinson and her four-year-old son Devon. The two had a good relationship, and had never argued. On November 8, 2001, Robinson was at the house of her friend, Cynthia Garza, with Devon, having dinner and celebrating her birthday, which included drinking alcohol. Appellant and a friend arrived later. Later in the evening, the four adults drove around in Robinson's car and continued to drink. Their versions of the events diverge after their return to Garza's house.

Robinson testified that appellant insisted on driving her and Devon home. After they dropped off appellant's friend, Robinson wanted to return to Garza's house because

3

she was concerned that appellant was intoxicated. He refused, saying *she* was drunk and should not be driving. Asserting that she was attempting to get away from appellant, Robinson testified that she grabbed the steering wheel with the intent to "get his attention or flip the car[1] and get out." A fight ensued in which both appellant and Robinson struck the other. Appellant stopped the car and grabbed Robinson when she got out to try to get Devon out of the back seat. Appellant shoved her, and she fell on the ground. Appellant then straddled her and choked her with his hands when she started screaming. Robinson testified that she "almost passed out" on two occasions.

Robinson further testified that appellant released her after Devon got out of the vehicle. Robinson then tried to appease appellant by acting apologetic. She got back in the car and they continued toward her apartment. Robinson asked appellant to stop at a convenience store so she could use the bathroom. While there, she gave a note to an employee with her name, address and telephone number, stating that appellant was trying to kill her and asking for help. After the couple left, the clerk called police who arrested appellant outside Robinson's apartment.

Appellant's version of the events comes from his testimony at the hearing on his motion for new trial. He testified that he offered to drive Robinson and Devon home because Robinson was intoxicated. As they were driving, Robinson grabbed the steering wheel and demanded to know "what bitch did you have in my car?" Appellant explained this conduct by saying he had driven Robinson's car the day before to have a tire repaired.

---

[1]Robinson conceded that her son was in the back seat at the time.

That day he loaned twenty dollars to a friend and agreed to hold a cell phone belonging to that person's girlfriend to secure the loan. Appellant then used that phone to call Robinson, apparently leading her to believe he was with the woman who owned the phone.

Robinson grabbed the steering wheel a second time and appellant knocked her hand away. She began to hit him. He almost lost control of the vehicle when one of Robinson's blows caught him on his ear. The vehicle left the roadway, and almost hit a pole before he was able to stop it. He got out of the car to check for damage and as he walked backward from the front of the vehicle Robinson began hitting him with a stick. He pushed her back to avoid being hit with the stick and Robinson fell. When appellant tried to take the stick from Robinson, she tried to scratch his face so he turned his head away while pushing her away. Appellant "let go" and yanked the stick away when he heard Robinson make a gagging sound. Then he grabbed her hands and tried to talk to her while she was screaming that he was cheating on her. Devon got out of the car and told the two to stop fighting. Appellant told him to get back in the car, and left Robinson to put him in the car. Appellant and Robinson then got back in the car. He also testified that they stopped at a convenience store before continuing to Robinson's apartment, where he was arrested.

At the hearing on his motion for new trial, appellant testified also that he repeatedly, both before and during trial, expressed to his trial counsel his desire to testify at trial. He testified to at least three such conversations before trial. Then, during Robinson's testimony, he told his lawyer that Robinson was not telling the whole story, and that he

wanted to get on the stand. He raised the matter again at a recess, and again at least two more times during the guilt/innocence phase. Appellant's testimony was that he brought the subject up every time he talked with his lawyer. According to appellant, his trial counsel responded with such statements as, "Your priors will kill you. They will use your priors against you."; "I don't think you ought to do that. I don't think that is a good idea."; and "Well, play it by ear." Appellant testified that he understood he could testify, but his lawyer never explained to him that he had the constitutional right to take the stand, or that it was his decision to make. If he had understood his right, appellant asserted, he would have insisted on testifying on his behalf despite his lawyer's advice.

The testimony of appellant's trial counsel at the hearing on the motion for new trial confirmed that appellant, on several occasions, told his lawyer that he wanted to tell his side of the story. No final decision was made prior to trial. Counsel told appellant that the State could use his prior convictions against him if he testified, and he thought those prior convictions would hurt appellant. Counsel could not recall the exact words he used in his discussions with appellant on the issue, but counsel did not think he should testify. He argued to appellant that the jury had sufficiently heard his side of the story from the tapes.[2] Counsel did not intend to call him as a witness, and told appellant so. Counsel recalled that, after the State rested its case, appellant again asked counsel to put him on the stand. Counsel never told appellant, in so many words, that he had the right to testify against

_____

[2]During his incarceration pending trial, jail records showed appellant made 513 telephone calls to Robinson. Fourteen of those calls were accepted, and thirteen were recorded. The State played portions of the tapes, and introduced letters appellant wrote Robinson from jail, as part of its case on guilt/innocence.

6

counsel's wishes. He assumed appellant knew he could override his lawyer's wishes and take the stand, and assumed that appellant finally acquiesced in his decision not to call him as a witness. Appellant never told him, though, that he agreed with the decision. Counsel testified that his thinking was that appellant's taking the stand would permit the jury to hear that he was then on probation and that he had a prior felony conviction. Counsel thought that part of appellant's story reached the jury through the tapes, although counsel acknowledged that the jury heard only 15 or 20 minutes of the more than two hours of taped conversations between appellant and Robinson.

Each of appellant's issues is presented as a challenge to the trial court's denial of his motion for new trial. His specific complaints are that the trial court erred in denying his motion because he was denied his right to testify in violation of (1) the due process clause of the fifth amendment to the U.S. Constitution; (2) the compulsory process clause of the sixth amendment; (3) his "right to be heard contained in" the fifth amendment; (4) his right to due course of law under Article I, Section 19 of the Texas Constitution; (5) the compulsory process clause of Article I, Section 10 of the Texas Constitution; (6) his "right to be heard" under Article I, Section 10 of the Texas Constitution; and (7) his statutory rights under Articles 1.04, 1.05, 1.051, 1.14, and 38.08 of the Code of Criminal Procedure. In issues 8 and 9, appellant argues he was denied reasonably effective assistance of counsel.[3]

---

[3]Appellant's issues alleging ineffective assistance of counsel relate only to counsel's deprivation of appellant's right to testify on his own behalf. Appellant does not contend on appeal that he was otherwise denied reasonably effective assistance of counsel. Our review of the record with respect to the effectiveness of counsel, and our

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995); *see State v. Gill*, 967 S.W.2d 540, 542 (Tex.App.–Austin 1998, pet. ref'd). We will not substitute our judgment for that of the trial court, but rather will decide whether its decision was arbitrary or unreasonable, *Lewis*, 911 S.W.2d at 7, or stated differently, whether its decision fell outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991).

The State does not question that a criminal defendant has a constitutional right to testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 49-52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In *Rock*, the Supreme Court held this right arises from the fifth and sixth amendments, is personal to the defendant, and cannot be waived by counsel. *Id.* at 46-47. To be effective, any waiver of the right to testify must be made knowingly and voluntarily. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

The State argues that all of appellant's complaints must be analyzed under the standards applicable to claims of ineffective assistance of counsel. In support, it relies on the decisions of the Eleventh Circuit in *United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992), and the Fifth Circuit in *United States v. Mullins*, 315 F.3d 449 (5th Cir. 2002), *Sayre v. Anderson*, 238 F.3d 631 (5th Cir. 2001) (orig. proceeding), and *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000) each holding the standards set out in *Strickland v.*

---

discussion of counsel's effectiveness later in this opinion, accordingly are limited to that with respect to the right of appellant to testify.

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), provide the proper analysis. The State also cites *Ex parte Okere*, 56 S.W.3d 846, 856 (Tex.App.--Fort Worth 2001, pet ref'd), *Perez v. State*, 960 S.W.2d 84, 88 (Tex.App.--Austin 1997, no pet.), and *Perez v. State*, No. 07-01-164-CR (Tex.App.–Amarillo 2001, no pet.), as examples of cases applying the *Strickland* analysis to defendants' claims they were denied their right to testify.

Recent decisions of the Fifth Circuit have recognized a distinction between deprivations of a defendant's right to testify caused by defense counsel and those resulting from conduct of the prosecutor or trial court. For example, in *Brown*, the appellant claimed he was deprived of his right to testify by the trial court and his counsel. 217 F.3d at 258-59. The court considered those claims separately and applied the *Strickland* analysis only to the second claim. *Id.* The court applied that distinction in *Sayre,* 238 F.3d at 634, and again in *Mullins, supra*, where it made a point to note the *Strickland* standard applied because the appellant's alleged deprivation of his right to testify resulted from action of his trial counsel. *Id.* at 452. It held that an alleged violation of that right by the court or prosecution is subject to a different analysis. *Id.* at 452, n.5. *See also Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991) (discussing harmless error review of denial of right to testify by the State).

Although, as noted, each of appellant's issues is couched in terms of a challenge to the trial court's denial of his motion for new trial, appellant does not argue that the trial court violated appellant's right to testify. His argument is that his trial defense counsel

9

violated that right. Appellant nonetheless contends that the effectiveness of counsel is not the appropriate inquiry in cases involving deprivation of a defendant's right to testify. Appellant argues in effect for a *per se* rule that would treat the violation of a criminal defendant's right to testify like structural error.[4] Citing recent decisions of the highest state courts in Tennessee[5] and Alaska[6], appellant urges us to adopt a rule requiring the trial court to insure that a criminal defendant is aware of the right to testify and that any waiver of the right was knowingly and validly made. He points us also to the Second Circuit's opinion in *Brown v. Artuz,* 124 F.3d 73 (2d Cir. 1997), which contains a thorough discussion of the various approaches courts have taken to the enforcement of a criminal defendant's right to testify.[7]

---

[4]Although we do not adopt appellant's suggestion, it is not without logic. The violation of a criminal defendant's right of self-representation is held to be structural error. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). The U.S. Supreme Court has described the right to testify as "even more fundamental to a personal defense than the right of self-representation," *Rock*, 483 U.S. at 52, however, it has not held the deprivation of the right to testify to be structural error. *See Gonzales v. State*, 994 S.W.2d 170, 171 n.4 (Tex.Crim.App. 1999) (distinguishing deprivation of right to counsel from deprivation of component right to conduct voir dire).

[5]*Momon v. State*, 18 S.W.3d 152 (Tenn. 1999) (rehearing granted in part, 18 S.W.3d 174, Tenn. 2000).

[6]*LaVigne v. State*, 812 P.2d 217 (Alaska 1991).

[7]We note, though, that after extensive discussion the court in *Artuz* adopted the *Teague* court's approach and found that the primary responsibility for protection of the defendant's right to testify lies with defense counsel. *Artuz*, 124 F.3d at 78-79.

Texas authority on this subject is sparse.[8] The Court of Criminal Appeals has not had occasion to address the violation of a criminal defendant's right to testify. Bearing in mind that federal law governs review of deprivations of federal rights, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), our review of this case will be guided by the holdings of the Fifth Circuit. *See Hernandez v. State*, 726 S.W.2d 53, 55-56 (Tex.Crim.App. 1986). Following *Brown*, *Sayre* and *Mullins*, we proceed, then, to an examination of appellant's claims under an ineffectiveness of counsel analysis.

The test for ineffective assistance of counsel set out in *Strickland* and adopted by the Court of Criminal Appeals in *Hernandez*, 726 S.W.2d at 57, contains two prongs. Under the first prong, an appellant must show that counsel's performance was "deficient." *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To be successful in this regard, an appellant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the second prong, an appellant must show that the deficient performance prejudiced the defense. *Id.* at 687. The standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

---

[8]As noted, we are cited to two cases in other courts of appeals in which failures of counsel to advise criminal clients of their right to testify were raised. See *Okere*, 56 S.W.3d at 856, and *Perez*, 960 S.W.2d at 88. In both those instances, though, it appears that the issue was presented in the context of an ineffective assistance of counsel argument.

sufficient to undermine confidence in the outcome." *Id.* at 694. An appellant must establish both prongs of the test. *White v. State*, 999 S.W.2d 895 (Tex.App.–Amarillo 1999, pet. ref'd).

Appellant contends the record establishes that his right to testify was violated because he did not make a knowing waiver of that right and sought to exercise it at every opportunity. In support he refers to the evidence presented at the hearing on the motion for new trial where he stated that he was never advised the decision to testify was his alone, and to his lawyer's testimony that he did not specifically advise appellant of his right to testify.

The State argues that appellant has not demonstrated deficient performance by his lawyer because "the record supports the trial court's implied determination that appellant was aware of his right to testify." Noting that the trial court did not make express findings of fact, and that we must therefore assume implied findings that support its ruling, the State points to a discussion during *voir dire* of a criminal defendant's right to testify or remain silent as evidence from which appellant's knowledge of his right to testify may be implied. We cannot agree that the record supports this contention. The relevant portion of the *voir dire* examination occurred during defense counsel's questioning of the panel where he stated:

> Well, my -- my philosophy on that is I make that decision [the decision whether to testify] for my clients. . . . Every time I've ever made that decision for my clients, they followed it. I've probably tried maybe 25 jury trials, and I've made that decision in every single case . . . .

Counsel gave examples of cases in which his clients testified and he felt it hurt their case, then said to the panel: "So from then -- you know, just prior experience, I've learned, you know, I make that decision." Counsel then asked three individual panel members whether they would want to testify against his advice if they were defendants. All three said yes.

Citing *Shu Guo Kan v. State*, 4 S.W.3d 38 (Tex.App.–San Antonio 1999, pet. ref'd), the State argues that appellant would have understood from this exchange that he had the right to testify and that the decision rested with him. We conclude, to the contrary, that from his lawyer's discussion with panel members, appellant would have learned that the decision rested with his lawyer. Certainly the discussion demonstrates trial counsel's belief that the right to make the decision belonged to him, not the defendant. Notably, in his hypothetical exchange with panel members about their desires to testify if they were defendants, counsel never indicated that they would be permitted to testify against his advice.

The State further argues that the decision not to put appellant on the stand was sound trial strategy. That well may be correct, but it does not end the inquiry. This is not a case like *Jackson v. State*, 877 S.W.2d 768 (Tex.Crim.App. 1994), *White*, *supra*, or *Beck v. State*, 976 S.W.2d 265 (Tex.App.–Amarillo 1998, pet. ref'd), in which the appellate court must review a record on direct appeal that is devoid of any evidence concerning counsel's reasons for making the decisions that are being challenged, and must therefore rely on the strong presumption under *Strickland* that counsel's "conduct falls within the wide range of

13

reasonable professional assistance; that is, . . . the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. Here the record affirmatively shows, through counsel's testimony, supported by his statements to panel members on *voir dire*, that counsel did not inform appellant of his right to testify.  Appellant testified at the hearing on the motion for new trial that he was not aware the decision to testify belonged to him. Nothing in his trial counsel's testimony leads to a different conclusion.

The law is clear that trial strategy must take a back seat to the exercise of the defendant's constitutional right to take the stand in his own defense. In *Teague*, the court wrote:

> [I]f defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted "within the range of competence demanded of attorneys in criminal cases" and the defendant clearly has not received reasonably effective assistance of counsel.

953 F.2d at 1534. *See also Mullins*, 315 F.3d at 454 (cannot be reasonable trial strategy for an attorney not to honor his client's decision to exercise his constitutional right to testify). We conclude that appellant's trial counsel deprived him of the ability to choose whether or not to testify in his own behalf, that so doing caused counsel's representation to fall below an objective standard of reasonableness, and that appellant has therefore established the first prong of *Strickland*.

14

Appellant's effort fails, though, on the second prong, for which we consider whether appellant has established prejudice, that is, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

We first note that appellant urges us to presume prejudice from his counsel's denial of his right to testify. There is authority for such a presumption of prejudice. *Perez*, 960 S.W.2d at 88. Following the example of the Fifth Circuit's approach to the issue in *Mullins* and *Sayre*, though, we will not give effect to such a presumption.

The *Mullins* opinion provides a template for our discussion of this issue. There, the defendant initially agreed with his defense counsel that he should not testify because it would lead to the introduction of evidence of his past convictions, but later changed his mind and wanted to testify. *Mullins*, 315 F.3d at 455. Although defense counsel improperly overrode the defendant's desire to testify, and thus was deemed guilty of deficient performance, prejudice to the defense was not established, in part, because counsel was able to get the defendant's version of the facts before the jury through other witnesses. *Id.* at 456.

Appellant argues that his defense was prejudiced by his inability to testify because his version of the events was not developed before the jury. He contends that the recordings of telephone conversations with Robinson played to the jury were incomplete and "only convey a fragment" of appellant's defense, and he would have "been able to

elaborate in great detail" his version had he been allowed to testify. Had he been able to testify, appellant contends, he could have explained to the jury that Robinson was the aggressor in their fight because of her mistaken belief that he was seeing another woman; that she nearly succeeded in wrecking the car; that she beat on him with fists and a stick; that she scratched his face; that he did not choke her but pushed on her while looking away with his eyes closed to prevent her from scratching him more; and that he immediately let go when she made a gagging sound.

The jury heard at least part of appellant's version of the incident. The record before us contains a compact disc of appellant's recorded telephone calls to Robinson. We have listened to the conversations that were played to the jury. Although we do not suggest that a recorded conversation is the equivalent of a defendant's testimony from the stand in front of a jury, appellant's trial counsel's argument to him that the jury had an opportunity to hear his story is not entirely without merit.

As in *Mullins*, too, the difficulty with appellant's contention is that his opportunity to testify to his version of the facts from the stand would have come at a price. Not only would his two prior felony convictions (one for theft of a firearm, the other for possession of cocaine) then have been before the jury, the State points out that appellant's taking the stand would have carried the risk of permitting the admission into evidence of such matters as the details of his prior misdemeanor conviction for choking and striking a previous domestic partner, and his *res gestae* statements that included his initial denial of being at the scene. The State further notes that appellant would have been subjected to cross-

16

examination on such subjects as his efforts (memorialized in the recorded telephone conversations and in appellant's letters to Robinson) to persuade Robinson to recant her story, to sign a non-prosecution affidavit and to plead the fifth amendment (which efforts also included his suggestion to Robinson that they could then sue the police and both have plenty of money), and his statements to Robinson during the telephone conversations in which he arguably admitted choking her.

Appellant acknowledges his prior criminal record would have been admissible had he testified, but argues that the most damaging aspect of his record, the prior assault conviction for choking, already was before the jury because the State introduced evidence of it to establish the enhancement allegation contained in the second count of the indictment. Appellant's argument unduly minimizes the likely impact of his other prior convictions and the other topics outlined by the State that would have been explored on cross-examination. On this record, we cannot find there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Like the court in *Mullins*, we conclude that appellant's testimony "*might* have persuaded, but not that there is a reasonable probability that it would have done so." *Mullins*, 315 F.3d at 456. Because appellant has failed to establish the second prong of *Strickland*, his federal constitutional claims fail. The trial court did not abuse its discretion in denying appellant's motion for new trial. We overrule appellant's issues one, two, three, eight and nine.

17

Appellant does not argue that the Texas Constitution affords a criminal defendant a greater right to testify on his own behalf than the federal constitution. The available authority also indicates that it does not. In *Carroll v. State*, 68 S.W.3d 250 (Tex.App.--Fort Worth 2002, no pet.), the court held Article I, Section 10 of the Texas Constitution gives no greater protection than the fifth amendment. *Id.* at 253. Similar holdings have been made with regard to the right of confrontation, *Gonzales v. State*, 818 S.W.2d 756, 764 (Tex.Crim.App. 1991), and right to counsel, *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App. 1999). Because those rights form the foundation of the right to testify, these holdings support the conclusion that the Texas Constitution does not afford greater protection. We therefore need not address appellant's state constitutional issues separately. *Brown v. State*, 943 S.W.2d 35, 36 n.3 (Tex.Crim.App. 1997). His issues four, five and six are overruled.

With respect to his issue seven, appellant has not presented an argument or authority that the Code of Criminal Procedure provides any greater protection of the right to testify than does the federal constitution. Indeed, appellant's arguments do not reference the statutes he alleges were violated. The issue presents nothing for our review, and is overruled. *Cf. Salazar v. State*, 38 S.W.3d 141 (Tex.Crim.App. 2001), *cert. denied*, 534 U.S. 855 (2001); *Price v. State*, 67 S.W.3d 512, 513 (Tex.App.--Dallas 2002, no pet.)

Having overruled appellant's issues, we affirm the judgment of the trial court in the assault case.

None of appellant's issues challenge the revocation of his community supervision, but his brief contains an argument that his improper conviction in the assault case "taints

the revocation case," requiring its reversal. Having affirmed the trial court's judgment in the assault case, we affirm also its judgment revoking appellant's community supervision.[9]

James T. Campbell
Justice

Publish.

---

[9]As an aside, we note also our disagreement with appellant's contention that reversal of his assault conviction would have required reversal of the probation revocation. It is well established that a revocation of community supervision will be affirmed if it is supportable on any ground alleged and established by the State. *Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App. 1980). The conduct on which the assault charge was based is only one of several grounds for revocation alleged by the State. In the hearing held March 27, 2002, the State established violations of the conditions of appellant's community supervision, unrelated to the assault charge, sufficient to support the trial court's action.