ACCEPTED
07-14-00340-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
2/26/2015 10:27:22 AM
Vivian Long, Clerk

## No. 07-14-00340-CR

_____

IN THE COURT OF APPEALS
SEVENTH DISTRICT OF TEXAS, AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
2/26/2015 10:27:22 AM
VIVIAN LONG
CLERK

_____

ALLYNE SHANE DOYLE,

Appellant,

v.

THE STATE OF TEXAS,

Appellee.

_____

On Appeal from the 69th Judicial District Court
Of Dallam County Texas

_____

### STATE'S BRIEF

_____

NANCY NEMER
District Attorney, *Pro Tem*
Assistant Attorney General

*JOSEPH P. CORCORAN
Assistant District Attorney, *Pro Tem*
Assistant Attorney General
Supervising Attorney
for Non-Capital Appeals
Criminal Appeals Division
State Bar No. 00793549
Joseph.Corcoran@TexasAttorneyGeneral.gov

*Lead Appellate Counsel

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1400
Facsimile: (512) 936-1280

_____

ATTORNEYS FOR THE STATE

## IDENTITY OF PARTIES AND COUNSEL

<u>Appellant</u>

Allyne Shane Doyle

*Represented by*

TIMOTHY D. SALLEY
(At both trial and on appeal)
Salley & Lands
102-B E 7th Street
Dumas, TX 79029
(806) 934-3185
tsalley53@gmail.com

<u>Appellee</u>

The State of Texas
*Represented by*

JOSEPH P. CORCORAN (on appeal)
NANCY NEMER
District Attorneys *Pro Tem*
Dallam County, Texas
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 – MC067
Austin, Texas 78711-2548
512-936-1400
Joseph.Corcoran@texasattorneygeneral.gov
Nancy.Nemer@texasattorneygeneral.gov

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL .............................................ii

TABLE OF CONTENTS ..............................................................iii

INDEX OF AUTHORITIES .........................................................v

STATEMENT OF THE CASE .......................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................4

STATEMENT OF FACTS ...........................................................4

SUMMARY OF THE ARGUMENTS ................................................10

ARGUMENTS AND AUTHORITIES ...............................................12

I.      Standard of Review ....................................................12

II.     Resolution of Appellant's Point of Error Is Impossible Because It Is Premised Upon Extra Record "Facts" Not Properly before the Court, and Which Could Not Have Been Considered by the Trial Court When Appellant's Original Motion Was Overruled by Operation of Law ......................................................................13

        A.      The 30-day time limit to file a motion for new trial.............13

        B.      Appellant's "supplemental" motion for new trial was in reality an untimely amendment.........................................14

        C.      The trial court could not have considered the Amended Motion over the State's objection; hence, Appellant failed to preserve his single point of error for review ..........15

iii

III. Even Assuming, *Arguendo*, that the Amended Motion was Properly Before the Trial Court, Appellant Fails to Establish that the Trial Court Abused its Discretion When it Denied the Amended Motion. ...................................................... 16

    A.    The trial court has no duty to inform a defendant that he has a constitutional right to testify, or to ensure that a defendant's waiver of that right is knowing or voluntary, under Texas law this obligation is on defense counsel ...................................................... 16

    B.    Appellant has failed to meet his burden of establishing that the trial court's decision to deny his motion for new trial was an arbitrary or unreasonable application of *Strickland*. ...................................................... 19

    C.    Appellant fails to meet his burden under either prong of *Strickland*. ...................................................... 22

PRAYER FOR RELIEF ...................................................... 24

CERTIFICATE OF SERVICE ...................................................... 25

CERTIFICATE OF COMPLIANCE ...................................................... 26

# INDEX OF AUTHORITIES

## Cases

*Adams v. State*, 514 S.W.2d 262 (Tex. Crim. App. 1974) ....................... 16

*Charles v. State*, 146 S.W.3d 204 (Tex. Crim. App. 2004) ..................... 21

*Dugard v. State*, 688 S.W.2d 524 (Tex. Crim. App. 1985) ..................... 14

*Emery v. Johnson*, 139 F.3d 191 (5th Cir. 1997) .................................... 17

*Garcia v. State*, 57 S.W.3d 436 (Tex. Crim. App. 2001) .......................... 21

*Garrett v. State*, 851 S.W.2d 853 (Tex. Crim. App. 1993) ...................... 16

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986) .................. 19

*Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999) ................ 20

*Holden v. State*, 201 S.W.3d 761 (Tex. Crim. App. 2006) ................ 12, 23

*Johnson v. State*, 120 S.W.3d 10 (Tex. App.—Amarillo 2003) ............... 17

*Johnson v. State*, 169 S.W.3d 223 (Tex. Crim. App. 2005) ............... 17, 18

*Klapesky v. State*, 256 S.W.3d 442 (Tex. App.–Austin 2008) ................ 14

*Lewis v. State*, 911 S.W.2d 1 (Tex. Crim. App. 1995) ............................. 12

*Mallett v. State*, 65 S.W.3d 59 (Tex. Crim. App. 2001) .......................... 20

*Marras v. State*, 741 S.W.2d 395 (Tex. Crim. App. 1987) ...................... 16

*Mitchell v. State*, 68 S.W.3d 640 (Tex. Crim. App. 2002) ........... 19, 20, 21

*My Thi Tieu v. State*, 299 S.W.3d 216 (Tex. App.—Houston [14th Dist.] 2009) ...................................................................................22

*Rock v. Arkansas*, 483 U.S. 44 (1987) ...............................................17

*Rodriguez v. State*, 292 S.W.3d 187 (Tex. App.–Amarillo 2009) 19, 20, 21

*Shanklin v. State*, 190 S.W.3d 154 (Tex. App.—Houston [1st Dist.] 2005) .......................................................................................22

*State v. Gill*, 967 S.W.2d 540 (Tex. App.—Austin 1998) ........................22

*State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007) ....................22

*State v. Zalman*, 400 S.W.3d 590 (Tex. Crim. App. 2013) ............... 14, 15

*Strickland v. Washington* ................................................................. 12, 20

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999) ....................21

*Williams v. State*, 780 S.W.2d 802 (Tex. Crim. App. 1989) ...................14

## Statutes

Tex. Code Crim. Proc. art 42.013 ..........................................................2

Tex. Penal Code § 12.32 ......................................................................1

Tex. Penal Code § 12.42(b) ..................................................................1

## Rules

Tex. R. App. P. 21.2 ...........................................................................16

Tex. R. App. P. 21.4(a).................................................................13

Tex. R. App. P. 21.4(b).................................................................13

Tex. R. App. P. 21.8(c) ...................................................................3

Tex. R. App. P. 26.2(a)(2) ...............................................................3

## STATEMENT OF THE CASE

The Grand Jury of the 69th Judicial District Court of Dallam County Texas, indicted Appellant, Allyne Shane Doyle, with the second-degree felony offense of aggravated assault with a deadly weapon. CR 5.[1] The indictment included a single, final-felony enhancement allegation, which if proven, increased the potential punishment range to that of a first-degree felony (*i.e.*, to a term of not less than five years, and not more than ninety-nine years, or life). CR 5; *see* Tex. Penal Code § 12.42(b) (West 2013); *see also* Tex. Penal Code § 12.32 (West 2013) (defining the punishment range for a first-degree felony offense). Appellant pleaded not guilty and proceeded to a bench trial. CR 35–36; 2 RR 5. The trial court found Appellant guilty of the offense as alleged in the indictment. CR 35–36; 3 RR 121. On the same day—July 8, 2014—after conducting a hearing on punishment, and after finding the enhancement paragraph to

---

[1] "CR" refers to the Clerk's Record—the transcript of pleadings and documents filed with the clerk during trial and is followed by page number. "RR" refers to the Reporter's Record of the transcribed trial proceedings, and is preceded by volume number and followed by page number.

be true, the trial court sentenced Appellant to twenty-five years' imprisonment.[2] 3 RR 187–88; CR 35. Although he was present when his sentence was pronounced in open court, Appellant did not testify at the punishment proceeding. 3 RR 133–86. As relevant to this appeal, immediately prior to the start of the punishment portion of the trial, Appellant voluntarily waived his right to be present during the questioning of witnesses, and left the courtroom. 3 RR 126–29.

On July 15, 2014—seven days after his sentence was imposed in open court—Appellant filed a motion for new trial, alleging only that "the verdict in this cause is contrary to the law and the evidence." CR 38 (the State will refer to Appellant's July 15, 2014 motion for new trial as the "Original Motion"). Appellant's Original Motion did not advance an allegation that he wished to testify at the punishment hearing, or a claim that his constitutional right to testify was violated. *See id.* Next, on August 19, 2014—42 days after his sentence was imposed in open court—

---

[2] The trial court also entered two additional findings: first that the offense for which Appellant had been convicted involved family violence under Tex. Code Crim. Proc. art 42.013; and second, that Appellant used a deadly weapon in commission of the offense. CR 5.

2

Appellant filed a "supplement" to his Original Motion in which he attached two affidavits, each suggesting two additional claims. CR 40–43 (the State will refer to this August 19, 2014 pleading as the "Amended Motion"). The first affidavit seemed to suggest that the State mistreated the complaining witness at trial. CR 42. The second affidavit was from Appellant himself, in which he stated that he had desired to testify during the punishment hearing, but that due to some kind of misunderstanding with trial counsel, he did not. CR 43.[3]

The State timely objected to the trial court's consideration of the Amended Motion, contending that it constituted an untimely amendment of the Original Motion. CR 47–48. No hearings occurred on either motion for new trial, and the lack of a written ruling in the record suggests that they were overruled by operation of law. *See* Tex. R. App. P. 21.8(c).

Appellant filed his notice of appeal on September 9, 2014. CR 44; *see* Tex. R. App. P. 26.2(a)(2). The State understands Appellant to raise a single point of error: That the trial court erred in denying his Amended

---

[3] The second affidavit appears to be the basis for the single point of error pending before the Court.

Motion, in which he first sought a new punishment hearing, because Appellant was unable to testify at that punishment hearing as a result of a misunderstanding between he and trial counsel. *See* Appellant's Br. at 8–11.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, the State does not believe that oral argument is necessary because the dispositive issue or issues have been authoritatively decided; the facts and legal arguments are adequately presented in the briefs and record; and the decisional process would not be significantly aided thereby.

## STATEMENT OF FACTS

Larry Wilkerson testified that on August 1, 2013, he was walking back from a local bank, along Fourth Street, when he heard two men arguing. 3 RR 10–11, 13. As he approached, he saw the two men standing in the open, continuing to argue. 3 RR 15–16. Eventually, Wilkerson saw one of the men jump into a pickup truck and forcefully drive the truck in reverse toward the other man, violently striking him. 3 RR 16. The driver was moving in reverse with sufficient force to cause the tires to "spin." 3

4

RR 16, 19. The man who was struck by the pickup was later identified as Quincy Allyn Doyle, Appellant's father. 3 RR 41. The truck's tailgate was down, and Quincy was struck with sufficient force that he "fell" onto the back of the truck. 3 RR 16, 19–20. The driver continued moving backwards, eventually striking the back of the truck—and Quincy—into a pile of "junk." 3 RR 16. If the driver had driven Quincy into anything other than a "junk pile," it would have "[s]quashed him dead." 3 RR 16. The driver then proceeded to move the truck forward with Quincy still hanging on, "spinning the gravel and everything, and . . . [Quincy] finally fell off the truck about the middle of the street."[4] 3 RR 16. Wilkerson then approached Quincy concerned that he was injured and might not be alive. 3 RR 16. Wilkerson then waited for police to arrive, and gave them his statement. 3 RR 16.

Quincy Allyn Doyle testified that Appellant is his son. 3 RR 32. Quincy has had a "rocky relationship" with Appellant for five to ten years. 3 RR 33–35. Appellant has a "really bad temper." 3 RR 38. Appellant tends to get angry when he "doesn't get his way." 3 RR 40. On August 1,

[4] The driver left the scene. 3 RR 79.

5

2013, Quincy had a "very loud argument" with Appellant over Appellant's attempt to take a tow bar from Quincy without a deposit, and also over Appellant's failure to pay money owed to Quincy. 3 RR 37–38. Appellant became extremely angry, got into his pickup truck, and "took off in his truck coming at me, you know, backwards and rammed me up in a pile of junk." 3 RR 40. In order to avoid being crushed between the truck and pile of junk, Quincy had to jump into the bed of the truck. 3 RR 40. Appellant then "took off" and Quincy eventually rolled off the truck and out into the street. 3 RR 40. In the street, Quincy encountered Wilkerson. 3 RR 41. Quincy acknowledged that he told police that Appellant had tried to kill him, and that in retrospect "you could say that." 3 RR 42. Quincy also testified that Appellant sent him several letters from jail, in which he repeatedly asked Quincy to file an affidavit of non-prosecution, in an effort to get the charged offense dismissed. 3 RR 54–63. Quincy also testified that in one of the letters, Appellant suggested that Quincy contact Wilkerson in an effort to obtain an affidavit of non-prosecution from Wilkerson. 3 RR 61–62.

Officer Rodrigo Jackson testified that he is a police officer for City of Dalhart Police Department. 3 RR 74. He testified that he was on duty on August 1, 2013, when he received a call to go to 320 Scott Street. 3 RR 74. Upon arrival Officer Jackson observed Quincy sitting on the ground, 3 RR 76, and asked Quincy what had happened, to which Quincy replied "Shane just tried to kill me." 3 RR 75; *accord* 3 RR 104 ("[Quincy] told me, my son, Shane, just tried to run me over."). Officer Jackson observed tire tracks that appeared to confirm that someone tried to hit Quincy with a vehicle. 3 RR 79. Officer Jackson testified that backing a truck up into a person could be a deadly weapon. 3 RR 101. Officer Jackson confirmed that Wilkerson was a witness to the "entire incident," and that Wilkerson provided a witness statement to that effect. 3 RR 105. Officer Jackson also testified that Appellant's reputation in the community was "not good." 3 RR 84.

Michelle Griffin testified that she was the chief dispatcher for the Dalhart County Jail. 3 RR 111. She testified regarding a letter that Appellant sent to Quincy from the jail. 3 RR 111–16; State Ex. 5. In the letter, Appellant attempted to have Quincy execute and file a non-

7

prosecution affidavit. 3 RR 114. Appellant also asked Quincy to contact Wilkerson and ask "him if he would tell that chick in Austin – and chick is spelled c-h-i-c just so you know – in Austin he wants no part in the situation, then she has no pull at all anyway look – any way you look at it."[5] 3 RR 115.

After he was found guilty, and during sentencing, Angela Reynolds testified that she had previously dated Appellant from May or June of 2008, until October of 2011. 3 RR 133–34. Reynolds testified that during the five-year period she dated Appellant, he was "very" violent, and that he repeatedly made her fear for her life. 3 RR 135. Reynolds testified that she was convicted of a drug offense that Appellant had actually committed, for the benefit of Appellant. 3 RR 136. She testified that Appellant repeatedly violated protective orders against him, and threatened to kill Reynolds and her family. 3 RR 140. Despite such violations, Appellant was not prosecuted. 3 RR 142. On one occasion, Reynolds attempted to leave Appellant, but he followed her with his

---

[5] This reference appears to be to Nancy Nemer, the assistant attorney general who prosecuted Appellant. *See* 3 RR 115.

truck, grabbed her by her hair and put in the passenger seat. 3 RR 143. After Reynolds exited the truck, Appellant repeatedly tried to ram her with the truck, forcing her to get behind trees to prevent him from hitting her. 3 RR 144. This was not the first time that Appellant grabbed Reynolds by her hair and forced her into his truck, against her will. 3 RR 146–47. Reynolds testified that over a five-year period, Appellant beat, choked, hit, slapped, kicked, threw down, and pulled her hair "a hundred times." 3 RR 148. And that she thought she was going to die "quite a few" times. 3 RR 148.

Brandy Blanco testified during sentencing that she had previously dated Appellant "on and off the last two . . . years." 3 RR 157. Blanco testified that during the two-year period she dated Appellant, he was violent, and he continually beat her up. 3 RR 157. Blanco testified that Appellant's threats caused her to be concerned for the safety of her entire family, and particularly her daughter. 3 RR 157–58. Blanco testified that she once tried to leave Appellant, and that after he found her, he forced her into his truck by threatening to kill her grandmother and daughter. 3 RR 159. At one point Appellant burned Blanco with a "torch," telling

9

her that "love hurts." 3 RR 160. Blanco testified that she believed Appellant injected her with narcotics without her consent. 3 RR 161–62. Indeed, Blanco testified that Appellant repeatedly punished her for calling the police. 3 RR 163. Although she repeatedly tried to leave Appellant, Blanco would return because he would threatened to hurt her daughter. 3 RR 164. Moreover, when Blanco stood up to Appellant's violent abuse, he often instituted the "three-second rule" in which he would choke her to unconsciousness in three seconds. 3 RR 166. On one occasion Appellant became particularly violent and forced Blanco's face and head into hot water, burning her. 3 RR 172–73. Appellant did this in front of Blanco's daughter, who yelled at Appellant to stop. 3 RR 173. Blanco's daughter then called Blanco's grandmother on a cellphone who came over to pick them up and Appellant threatened to kill them. 3 RR 173–74. Despite the presence of Blanco's grandmother—and her threat to call police—Appellant refused to let Blanco leave. 3 RR 174. Blanco also testified that Appellant contacted her from jail (after his arrest for the present offense), and asked her to lie. 3 RR 174–75.

## SUMMARY OF THE ARGUMENTS

10

The Court should overrule Appellant's single point of error. First, the Amended Motion for new trial in which Appellant first suggested his desire to testify, and in which he first requested a new punishment hearing, constituted an untimely amendment to the Original Motion. This is because the Amended Motion was filed more than 30 days after the trial court imposed Appellant's sentence in open court. The State objected on this basis in the trial court, which meant the Amended Motion was not properly before the trial court. Since the trial court could not have abused its discretion in denying Appellant's motion for new trial on that basis, the single point of error presents nothing for this Court to review.

Second, even assuming that the Amended Motion was properly before the trial court—and hence, that the trial court made a discretionary decision thereto, reviewable by this Court—Appellant's point of error is without merit. Under Texas law there is no free-standing obligation on the part of the trial court to either inform a defendant of his right to testify, or to ensure that the right is properly waived. Rather, the Texas courts place the duty to so inform on trial counsel, and analyze the

question of whether a defendant was denied his right to testify under the auspices of *Strickland v. Washington*.[6] And because the record does not contain any information upon which to reverse the trial court with reference to *Strickland*, Appellant fails his burden and the Court should overrule his point of error.

<div align="center">

ARGUMENTS AND AUTHORITIES

</div>

## I. Standard of Review

This Court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion denying a motion for new trial only when no reasonable view of the record would support the trial court's ruling. *Id*.

---

[6] 466 U.S. 668 (1984).

II.     Resolution of Appellant's Point of Error Is Impossible Because It Is Premised Upon Extra Record "Facts" Not Properly before the Court, and Which Could Not Have Been Considered by the Trial Court When Appellant's Original Motion Was Overruled by Operation of Law.

A.      The 30-day time limit to file a motion for new trial

To be timely, a motion for new trial must be filed within 30 days of "the date when the trial court imposes or suspends sentence in open court." Tex. R. App. P. 21.4(a). The same 30 day rule applies to amendments:

> *To Amend.* Within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial, a defendant may, without leave of court, file one or more amended motions for new trial.

Tex. R. App. P. 21.4(b). Here, Appellant's request for a new punishment hearing—which included the affidavit suggesting his desire to testify—was advanced as part of the Amended Motion, filed more than 30 days after sentencing. Hence, to the extent that the Amended Motion constituted an "amendment" under Rule 21.4(b), it was untimely.

B.     Appellant's "supplemental" motion for new trial was in reality an untimely amendment.

The law in Texas is plain: Filing affidavits in support of a motion for new trial more than 30 days after sentencing, is considered an untimely attempt to amend the initial motion for new trial. *Dugard v. State*, 688 S.W.2d 524, 529–30 (Tex. Crim. App. 1985), *overruled on other grounds by Williams v. State*, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989); *see also Klapesky v. State*, 256 S.W.3d 442, 455 (Tex. App.–Austin 2008, pet. ref'd). Since the Amended Motion—which was filed some 42 days after sentencing—contained the new legal claim described in the affidavit (regarding Appellant's purported desire to testify at sentencing), it constituted an untimely amendment to the Original Motion. *See Dugard*, 688 S.W.2d at 529–30; *Klapesky*, 256 S.W.3d at 455.

And to the extent that Appellant might argue that the Amended Motion was merely a more detailed argument in support of the Original Motion, his argument again fails. *See State v. Zalman*, 400 S.W.3d 590, 594–95 (Tex. Crim. App. 2013) (noting that counsel cannot supplement a form motion for new trial that advances a generic claim, with an untimely and more detailed amendment that advances a specific claim). Here,

14

there was nothing in the Original Motion that even hinted at Appellant's purported desire to testify; and hence, Appellant's Amended Motion, upon which this appeal is premised, was untimely.

C.    **The trial court could not have considered the Amended Motion over the State's objection; hence, Appellant failed to preserve his single point of error for review**.

"[I]t is error for the trial court to rule on an untimely amendment [to a motion for new trial] over a proper objection." *Zalman*, 400 S.W.3d at 595. Here, the State objected to the Amended Motion as being untimely. CR 47–48. As a result, the trial court was not permitted to "rule" on the untimely amendment contained within the Amended Motion. *Zalman*, 400 S.W.3d at 595. And since the order denying Appellant's motions for new trial (by operation law) could not have extended to discretionary consideration of the Amended Motion, the point of error presents nothing for this Court to review.

The same holds for the *factual* assertions in the affidavit itself:

> A motion for new trial is a prerequisite to presenting a point of error on appeal only *when necessary to adduce facts not in the record*.

Tex. R. App. P. 21.2 (emphasis added). Because review of Appellant's point of error would require reference to a factual assertion existing outside of the record of the trial proper, Appellant's failure to advance the affidavit as part of a timely motion for new trial means that his evidence of error is not before the Court, and any error is "waived." *See Adams v. State*, 514 S.W.2d 262, 264 (Tex. Crim. App. 1974); *see also Marras v. State*, 741 S.W.2d 395, 407 (Tex. Crim. App. 1987), *overruled on other grounds by Garrett v. State*, 851 S.W.2d 853 (Tex. Crim. App. 1993) ("The appellant failed to make this complaint at trial or in his motion for new trial. The appellant has failed, therefore, to show this Court any violation of Article 36.27 and has failed to overcome the presumption of regularity in the proceedings."). Appellant's point of error should be overruled.

III. **Even Assuming, *Arguendo*, that the Amended Motion was Properly Before the Trial Court, Appellant Fails to Establish that the Trial Court Abused its Discretion When it Denied the Amended Motion.**

A. **The trial court has no duty to inform a defendant that he has a constitutional right to testify, or to ensure that a defendant's waiver of that right is knowing or voluntary, under Texas law this obligation is on defense counsel.**

In the interests of justice, the State alternatively addresses Appellant's unpreserved point of error on its merits. A criminal

16

defendant undoubtedly has a constitutional right to testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987). This right arises from the Fifth and Sixth Amendments of the Constitution, is personal to the defendant, and cannot be waived by counsel. *Id.* at 46–47. To be effective, any waiver of the right to testify must be made knowingly and voluntarily. *Johnson v. State*, 120 S.W.3d 10, 15 (Tex. App.—Amarillo 2003), *aff'd* 169 S.W.3d 223 (Tex. Crim. App. 2005) (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).

While the right to testify occupies an important place in our constitutional framework, the Court of Criminal Appeals (the "CCA") has determined that a trial court has no duty to actually *inform* a defendant about that right to testify. *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) ("If the trial court is not required to admonish a represented defendant about the right *not* to testify—arguably the "more fragile right"—then the trial court surely has no duty to do so with regard to the converse right *to* testify") (emphasis in original).

Rather "defense counsel shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the

17

ultimate decision belongs to the defendant." *Id*. Moreover, in *Johnson* the CCA rejected the minority approach which would have required a trial court to affirmatively ensure that a defendant who does not testify has knowingly waived that right. *See id*. at 234–35 (rejecting the minority view "imposing on the trial court a duty to ensure a knowing waiver of the right to testify.").

And because "imparting that information is defense counsel's responsibility," the courts are directed to apply the legal framework described in *Strickland v. Washington* to measure whether a defendant's right to testify was effectively "denied by defense counsel." *Johnson*, 169 S.W.3d at 235. In other words, the CCA has grafted *Strickland*'s two-part legal measure to resolve all claims that a defendant was denied his constitutional right to testify. *Id*.

To this end, the State next analyzes the requirements of *Strickland* to determine if Appellant has met his burden of establishing that the trial court's decision not to act and to deny his Amended Motion new trial was arbitrary or unreasonable.

**B.** Appellant has failed to meet his burden of establishing that the trial court's decision to deny his motion for new trial was an arbitrary or unreasonable application of *Strickland*.

"*Strickland v. Washington* is the seminal case setting forth the standard for ineffective assistance of counsel claims under the United States Constitution." *Rodriguez v. State*, 292 S.W.3d 187, 188 (Tex. App.– Amarillo 2009, no writ). *Strickland* established a two-pronged legal measure—reversal requires Appellant to demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced Appellant. *Id.* at 188–89 (citing *Hernandez v. State*, 726 S.W.2d 53, 54–55 (Tex. Crim. App. 1986)).

The first prong of the *Strickland* test requires an appellant prove that counsel made such serious errors that he did not function as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 189. The second *Strickland* prong requires an appellant "show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). "Reasonable probability" means probability of a degree sufficient to undermine confidence in the outcome.

19

*Id.* The *Strickland* test for prejudice applies even in cases like this one, in which the purported deficiency relates only to a non-capital *sentencing* outcome, and not to the question of a defendant's guilt. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) ("Assuming *Strickland* left open the question of whether a defendant is required to show prejudice from deficient attorney performance at noncapital sentencing proceedings, we perceive no valid reason why *Strickland* cannot apply, or why a different rule should apply, to noncapital sentencing proceedings.").

An appellant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Rodriguez*, 292 S.W.3d at 189 (citing *Mitchell*, 68 S.W.3d at 642). The Court's review of counsel's performance is highly deferential, and a strong presumption exists that counsel's conduct fell within a wide range of reasonable professional assistance. *Id.* (citing *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)); *see Strickland*, 466 U.S. at 689 (noting there are countless ways to provide effective assistance in any given case).

To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly rooted in the record. *Rodriguez*, 292 S.W.3d at 189 (citing *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999)). In the majority of cases, the record on direct appeal is inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance; thus, the better course is to pursue the claim in habeas proceedings. *Mitchell*, 68 S.W.3d at 642. Absent evidence of counsel's reasons for the challenged conduct, the Court is not permitted to conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

And this burden is even higher in the present procedural posture, because the Court is to review the two prongs of *Strickland v. Washington*, through this abuse of discretion prism governing motions for new trial, reversing only if the trial court's decision is arbitrary or unreasonable. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part by rule of appellate procedure 21.8(b) on other*

21

*grounds, as recognized by State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007); *My Thi Tieu v. State*, 299 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *Shanklin v. State*, 190 S.W.3d 154, 158–59 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd*, 211 S.W.3d 315 (Tex. Crim. App. 2007); *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd) (holding that when a trial court grants a motion for new trial on the basis of ineffective assistance of counsel, an appellate court should review the standards of *Strickland* through a prism of the abuse of discretion standard and decide whether the trial court's decision to grant a new trial was so outside the zone of reasonable disagreement that it is subject to reversal). Appellant has failed to establish a *Strickland* violation by means of this highly discretionary standard.

C.    Appellant fails to meet his burden under either prong of *Strickland*.

The record is devoid of any evidence upon which to analyze the lower court's purported decision to overrule the Amended Motion for new trial, at least with respect to this point of error. In his Amended Motion, Appellant failed even to *allege*—much less to argue—that counsel was

22

constitutionally ineffective with respect to Appellant's right to testify during punishment. Moreover, Appellant fails to establish the required *Strickland* prejudice as to his ultimate sentence; and failed even to provide the lower court with a description of the testimony he would have given. Appellant cannot establish prejudice because of the horrific nature of the State's evidence during the penalty phase of the trial. Because Appellant provided no affirmative evidence in support of either prong of *Strickland*, he necessarily fails to establish that the trial court acted arbitrarily or unreasonably when it denied his motion for new trial. *See Holden*, 201 S.W.3d at 763.

This point of error should be overruled.

# PRAYER FOR RELIEF

FOR ALL THESE REASONS, the State respectfully requests that this Honorable Court overrule Appellant's single point of error and affirm his conviction and sentence.

<div style="margin-left:40%">

Respectfully submitted,

NANCY NEMER
District Attorney, *Pro Tem*
Assistant Attorney General

</div>

*Lead Appellate Counsel

<div style="margin-left:40%">

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN*
Assistant District Attorney, *Pro Tem*
Assistant Attorney General
Supervising Attorney
  for Non-Capital Appeals
Criminal Appeals Division
State Bar No. 00793549
Joseph.Corcoran@TexasAttorneyGeneral.gov

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
Telephone: (512) 936-1400
Facsimile: (512) 936-1280

ATTORNEYS FOR THE STATE

</div>

## CERTIFICATE OF SERVICE

Pursuant to Rule 9.5(b)(1) of the Texas Rules of Appellate Procedure, I do hereby certify that a true and correct copy of the foregoing notice was served electronically through the electronic filing manager, on the following attorney via electronic mail:

Timothy D. Salley
State Bar No. 00795633
tsalley53@gmail.com

Moreover, I do hereby certify that a true and correct copy of the foregoing pleading has been served *directly* on counsel of record on the same day of this electronic filing, to Mr. Salley, via electronic mail.

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant District Attorney, *Pro Tem*
Assistant Attorney General

25

## CERTIFICATE OF COMPLIANCE WITH
## TEXAS RULE OF APPELLATE PROCEDURE 9.4

This brief complies with Tex. R. App. Proc. 9.4(i)(2)(C) in that it contains 4,109 words (excluding the sections designated in Rule 9.4(i)(1)), in Microsoft Word 2010, Century, 14 points..

<div align="right">

/s/ Joseph P. Corcoran

JOSEPH P. CORCORAN
Assistant District Attorney, *Pro Tem*
Assistant Attorney General

</div>